# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00352-CR

**The State of Texas, Appellant**

**v.**

**Mary Guthrie Nelson, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2 OF TOM GREEN COUNTY
### NO. 05-03616L2, HONORABLE PENNY ANNE ROBERTS, JUDGE PRESIDING

## O P I N I O N

The State appeals an order granting appellee Mary Guthrie Nelson's motion to suppress evidence in this prosecution for possession of less than 28 grams of diazepam. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West 2006). The controlled substance was seized following Nelson's arrest for driving while intoxicated. The court concluded that both the initial traffic stop and the subsequent arrest were unlawful. The State contends that a tip from a concerned citizen and the officer's own observations provided a sufficient basis for the stop, and that the knowledge the officer gained after the stop gave him probable cause for the arrest. Although we agree with the State that the initial stop was lawful, we agree with the trial court's conclusion that there was not probable cause for the arrest. Therefore, we will affirm the suppression order.

### *The Stop*

The incident at issue occurred on the night of October 22, 2005. Kathy Winkley testified that she and her daughter-in-law were driving north from Eden toward San Angelo when she noticed the vehicle ahead of them being driven in what she considered to be an erratic fashion. Winkley testified that she first noticed the other vehicle in a highway construction area, when it almost entered the southbound lane in disregard of traffic cones separating the lanes. After the construction zone ended and the highway divided into four lanes with a grass median between the northbound and southbound lanes, she saw the suspect vehicle "going like from the grass on the right side over to [the] other grass on the left side, back-and-forth." At this point, Winkley called 911 on her cell phone "because I didn't feel like it was safe." Winkley testified that she did not get close enough to the suspect vehicle to describe it in detail or get its license number because it would sometimes speed up to ninety miles-per-hour and then the driver would "slam on the brakes." Nevertheless, she kept it in sight as she followed it for about twenty minutes while describing her observations to the dispatcher. When the suspect vehicle was stopped, Winkley also stopped and remained at the scene until a deputy took her statement.

Deputy Joe Ybarra testified that he was dispatched to investigate the report of a possible drunk driver who was "all over the road." The record reflects that there was little traffic, and Ybarra said that he was able to find the two vehicles approaching San Angelo from the south, one following the other in the outside lane. Ybarra testified that he "got in between the vehicles" and began to follow the suspect. He said, "This vehicle was within its lane weaving back-and-forth, and then a couple of times or two occasions it crossed a solid white line leading into the improved shoulder, and it drove on the improved shoulder for some way."

2

The video camera in Ybarra's patrol car recorded the incident. The videotape was introduced in evidence and has been viewed by this Court. The videotape reflects that Ybarra followed the suspect vehicle for one minute before stopping it. During this time, the vehicle drifted toward the broken line dividing the two northbound lanes three times, touching the line with its left tires. The vehicle also drifted to the right three times, once touching and twice crossing the solid line, also called the fog line, separating the outer lane of traffic from the improved shoulder. The two times the fog line was crossed, the suspect vehicle's right tires were never more than a few inches over the line, and they remained there for no more than one or two seconds. The videotape also shows that twice after weaving to one side of the lane or the other, the driver of the suspect vehicle stepped on the brakes. Ybarra acknowledged that there was no other traffic and that he did not see the suspect vehicle commit an unsafe act.

Ybarra testified that he stopped the suspect vehicle, which was driven by Nelson, for failing to maintain a single lane and for driving on the improved shoulder. *See* Tex. Transp. Code Ann. §§ 545.058, .060 (West 1999). The State contends that Ybarra's testimony and the videotape evidence establishes that the deputy had a reasonable basis for suspecting a traffic violation on the basis of his observations alone. The State further contends that when the information received from Winkley is considered, the deputy had a reasonable basis for suspecting that appellant was driving while intoxicated. In either case, the State contends that the stop was justified.

A warrantless automobile stop is a Fourth Amendment seizure analogous to a temporary detention, and it must be justified by reasonable suspicion. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *Hernandez v. State*, 983 S.W.2d 867, 869 (Tex. App.—Austin 1998, pet. ref'd). The reasonableness of a temporary detention must be examined in terms of the totality

3

of the circumstances. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). A detaining officer must have specific articulable facts that, taken together with rational inferences from those facts, lead him to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Id.*; *Hernandez*, 983 S.W.2d at 869. It is the State's burden to prove that a warrantless detention was lawful. *State v. Huddleston*, 164 S.W.3d 711, 716 (Tex. App.—Austin 2005, no pet.).

When reviewing a trial court's ruling on a motion to suppress, we give almost total deference to the court's determination of the historical facts that the record supports, especially when those fact findings are based on an evaluation of the witnesses' credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The same level of deference is accorded the trial court's rulings on mixed questions of law and fact if those decisions turn on the credibility and demeanor of the witnesses. *Id.* We review de novo mixed questions of law and fact that do not turn on witness credibility. *Id.*

The trial court made written findings of fact and conclusions of law. With regard to the initial traffic stop, the court found:

- Deputy Ybarra overheard a dispatch call about a possible drunk driver on Highway 87 and he responded to the call in his patrol unit.

- The driver who made the call was on the phone with the dispatcher and was following the vehicle operated by the Defendant.

- Deputy Ybarra received information from the dispatcher that the vehicle was "all over the road" but did not recount what, if any, other information he received about the vehicle operated by the Defendant.

- Deputy Ybarra admitted that the information he had prior to the time he pulled in behind the vehicle operated by the Defendant was insufficient to allow him to form a reasonable suspicion or probable cause to effect a traffic stop of the Defendant.

4

- Deputy Ybarra located the vehicles and pulled in behind the vehicle operated by the Defendant and began to observe the Defendant's driving ability.

- Deputy Ybarra stated there was nothing unsafe in the movements of Defendant's vehicle as he followed behind the Defendant.

- Based on the Court's viewing of the videotape (State's Exhibit #1) and considering the testimony of Deputy Ybarra, the Defendant did not drive in an unsafe manner.

- The videotape admitted as State's Exhibit #1 contradicted some of Deputy Ybarra's observations at the scene and his testimony at the suppression hearing which had a direct bearing on his credibility.

The court concluded that the stop "cannot be justified as pursuant to a traffic violation" or "under the totality of the circumstances that were either testified to or observable from the videotape."

The factual basis for stopping a vehicle need not arise from the officer's personal observation but may be supplied by information acquired from another person. *Adams v. Williams*, 407 U.S. 143, 147 (1972); *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005). A stop based on facts supplied by a citizen-eyewitness, when adequately corroborated by the officer, does not run afoul of the Fourth Amendment. *Brother*, 166 S.W.3d at 259. "Corroboration" does not mean that the officer must personally observe the conduct that causes him to reasonably suspect that a crime is, has been, or is about to be committed. *Id*. at n.5. Rather, it refers to whether the officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified. *Id*. Unsolicited information regarding a crime in progress provided by a citizen who has no relationship with the police and who makes herself accountable by providing contact information is inherently reliable. *See id*. at 258; *Reesing v. State*, 140 S.W.3d 732, 737 (Tex. App.—Austin 2004, pet. ref'd); *Pipkin v. State*, 114 S.W.3d 649, 655 (Tex. App.—Fort Worth 2003, no pet.).

In *Brother*, the defendant's erratic driving was reported by a citizen who called 911 on her cell phone after she witnessed the defendant speeding, tailgating, and weaving across several lanes of traffic. 166 S.W.3d at 256. The citizen continued to follow the defendant and monitor his driving, remaining in contact with the 911 operator until the defendant was stopped by a police officer. *Id*. at 257. The citizen remained at the scene of the stop and provided the officer with her contact information. *Id*. Although the officer did not personally witness a traffic offense, the court of criminal appeals affirmed the court of appeals's judgment that under the totality of the circumstances, the stop was reasonable under the Fourth Amendment. *Id*. at 259-60.

In *Reesing*, an identified caller to 911 reported seeing the defendant, who had displayed signs of intoxication in the caller's presence, driving away from a store. 140 S.W.3d at 734. The caller provided a description of the defendant and his car and followed him in his own vehicle, reporting the defendant's location and describing his erratic driving. *Id*. The defendant was stopped by a police officer acting on the basis of the information supplied by the caller and who did not personally see the defendant commit an offense. *Id*. at 735. This Court held that under the totality of the circumstances, the officer had a reasonable basis for suspecting that the defendant was driving while intoxicated and to stop him for further investigation. *Id*. at 737.

Nelson argues that *Brother*, *Reesing*, and other similar cases are distinguishable because, in those cases, the officer who made the stop was given a detailed account of the information provided by the citizen informer. *See Brother*, 166 S.W.3d at 257 n.1; *Reesing*, 140 S.W.3d at 737. In this cause, Ybarra testified that he was told that there was a report of a possible drunk driver who was "all over the road," but there is no evidence that he knew any of the other details supplied by Winkley regarding Nelson's driving. Nelson also points to Ybarra's

6

testimony that the information he had received before he began to follow Nelson's vehicle did not give him the reasonable suspicion he needed to make a traffic stop. The trial court's findings of fact reflect that both of these factors influenced its conclusion that the stop was unlawful.

Ybarra's belief that the information he had received from the dispatcher did not give him a reasonable basis for stopping Nelson is not determinative. The "reasonable suspicion" standard is an objective one. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). If an officer has an objective basis for the stop, his subjective intent is irrelevant. *Id*.

As to whether Ybarra had objectively sufficient information, it is instructive to consider the facts in *State v. Fudge*, 42 S.W.3d 226 (Tex. App.—Austin 2001, no pet.). In *Fudge*, a police officer was parked outside a convenience store when a cab driver approached and said that he had just seen a white pickup truck driving "all over the road," that the truck "couldn't stay on the road," and that he believed that the driver of the truck was drunk. *Id*. at 228. Just then, a white pickup pulled into the parking lot and the cab driver said, "That's it right there." The officer stopped the pickup truck based solely on this information, and the driver was subsequently arrested for driving while intoxicated. *Id*. This Court held that the cab driver's unsolicited face-to-face tip was sufficient to warrant the investigatory stop. *Id*. at 232.

Ybarra knew that a citizen informer had called to report a possible drunk driver who was weaving "all over the road." He also knew that the caller was still on the line and following the suspect vehicle. Under the circumstances, he could reasonably believe that the caller had identified herself, as in fact she had, and thus infer that her information was reliable. Ybarra located the two vehicles where he was told they would be. Whether or not Nelson committed a traffic violation in Ybarra's presence, a question we do not decide, her weaving from side-to-side in the single lane of

7

traffic gave a small additional measure of corroboration to Winkley's report. *See Reesing*, 140 S.W.3d at 737. Viewing the evidence in the light most favorable to the trial court's ruling and accepting the trial court's fact findings as true, we hold that the totality of the circumstances gave Ybarra a reasonable basis for suspecting that Nelson was driving while intoxicated and to stop her for further investigation.

### *The Arrest*

After stopping Nelson, Ybarra had her step from her vehicle. He told her that another driver had reported that she was driving all over the road. Nelson acknowledged this, explaining that she had been looking for a snuff can. Ybarra immediately noticed the snuff can in open view in a cloth mesh pocket in the driver's side door panel.

Ybarra did not detect any odor of alcoholic beverage on or about Nelson's person, but he did notice that her pupils were "constricted." Ybarra testified that he considered this to be a sign of possible controlled substance intoxication, but he acknowledged having no drug recognition training. He also conceded on cross-examination that Nelson's pupils may have contracted due to the brightness of his emergency lights, which the videotape shows he turned off before administering the field sobriety tests.

Ybarra testified that Nelson passed the horizontal gaze nystagmus test. Ybarra said during direct examination that the HGN test is only significant in cases of alcohol intoxication, but he admitted on cross-examination that he was unsure whether the test is also used when testing for drugs. On direct examination, Ybarra testified that Nelson failed the walk-and-turn and one-leg stand tests. When questioned in more detail on cross-examination, he indicated that he observed two

clues on the walk-and-turn, but he did not know how many possible clues there are on this test. Ybarra testified on cross-examination that there are "approximately four" clues in the one-leg stand and that Nelson displayed one. The videotape shows that Nelson performed the walk-and-turn on the unimproved edge of the highway shoulder; Ybarra admitted that the test should have been carried out on the smoother improved surface. Ybarra also acknowledged that he did not give Nelson all of the instructions called for in the testing manual.

After the field tests were completed, Ybarra arrested Nelson for driving while intoxicated due to a drug or controlled substance. Ybarra explained that this charge was later dropped because Nelson was never evaluated by a certified drug recognition expert.

With respect to the issue of probable cause, the trial court found:

- Deputy Ybarra did not smell any alcohol on the Defendant when he made contact with the Defendant and during his detention of the Defendant.

- Deputy Ybarra found no nystagmus, horizontal or vertical, during his performance of the Horizontal Gaze Nystagmus test on the Defendant.

- Deputy Ybarra stated he was certified in field sobriety testing however this claim seemed to be less than credible in light of his testimony regarding administration of the field sobriety tests and the videotape that was admitted into evidence as State's Exhibit #1.

- During the period of time Deputy Ybarra talked with the Defendant and administered the Horizontal Gaze Nystagmus test to the Defendant, the Defendant appeared to stand in one place without any swaying of her body.

- Deputy Ybarra stated that Defendant's pupils were constricted which could be a sign of the Defendant being under the influence of some type of medical or illegal narcotic.

- Deputy Ybarra had no training in drug recognition and disavowed any expertise in that area as well as any knowledge that nystagmus is one of the factors that is considered by a drug recognition expert.

9

- The videotape demonstrated that Deputy Ybarra was concerned about the brightness of the takedown lights on his patrol unit and the effect it might have on the Defendant's eyes when he stated on the videotape that he needed to turn off the takedown lights during the administration of the Horizontal Gaze Nystagmus test.

- Deputy Ybarra admitted that bright lights cause the pupils to become constricted.

- There were inaccuracies in Deputy Ybarra's testimony regarding the instructions and the actual performance of the field sobriety testing by the Defendant and what was actually observed in State's Exhibit #1.

The trial court concluded that Ybarra did not have probable cause to believe that Nelson was guilty of driving while intoxicated by reason of alcohol, a drug, a controlled substance, or some combination of substances.

A peace officer may arrest an offender without a warrant when he has probable cause to believe that an offense has been committed in his presence or view. Tex. Code Crim. Proc. Ann. art. 14.01(b) (West 2005). Probable cause to arrest exists at the moment the facts and circumstances within the officer's knowledge and of which the officer has reasonably trustworthy information is sufficient to warrant a prudent person in believing that the suspect has committed an offense. *Amores v. State*, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991). The burden is on the State to prove the existence of probable cause to justify a warrantless arrest. *Id.*

Ybarra had reasonably trustworthy information that Nelson had been driving "all over the road." Nelson admitted this after she was stopped and offered an innocent, if somewhat dubious, explanation. Ybarra noticed that Nelson's pupils seemed unusually constricted, a condition he attributed to possible drug use. However, the deputy acknowledged that he was not trained in drug recognition and admitted the possibility that Nelson's pupils were constricted due to his bright lights. Nelson passed the HGN test: Ybarra initially testified that this was irrelevant to the issue of

10

drug intoxication, but he later indicated that he was not sure of this. Ybarra testified that Nelson failed the other two field sobriety tests, but this conclusion was undermined by Ybarra's inability to remember how many clues there are on these tests. There is no evidence that two clues on the walk-and-turn and one clue on the one-leg stand are indicative of intoxication. The trial court also found, and Ybarra acknowledged in his testimony, that the field tests were not performed in strict accordance with the prescribed standardized procedures. It is obvious from its findings that the trial court believed that Ybarra did not properly administer the field sobriety tests and was not qualified to recognize drug intoxication. Viewing the evidence in the light most favorable to the court's ruling and deferring to the trial court's findings of fact, we hold that the State did not meet its burden of proving that Ybarra had probable cause to arrest Nelson for driving while intoxicated.

The trial court's order granting Nelson's motion to suppress is affirmed.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   June 29, 2007

Publish

11