NO. 07-07-0187-CR
Â 
IN THE COURT OF APPEALS
Â 
FOR THE SEVENTH DISTRICT OF TEXAS
Â 
AT AMARILLO
Â 
PANEL D 
Â 
JULY 28, 2008
Â 
______________________________
Â 
Â 
JOE SAENZ MARTINEZ, APPELLANT
Â 
V.
Â 
THE STATE OF TEXAS, APPELLEE
Â 
_________________________________
Â 
FROM THE 287TH DISTRICT COURT OF BAILEY COUNTY; 
Â 
NO. 2452; HONORABLE GORDON H. GREEN, JUDGE
Â 
_______________________________
Â 
Â 
Before QUINN, C.J. and CAMPBELL and PIRTLE, JJ.
Â 
Â 
OPINION
Â 
Â 
Â Â Â Â Â Â Â Â Â Â Â Appellant, Joe Saenz Martinez, pled guilty to a third degree felony for driving while
intoxicated.


 Punishment was assessed at six years confinement and a $2,500 fine. 
Appellant contends the trial court erred in denying his motion to suppress evidence because:
(1) Cochran County Deputy Sheriffs exceeded their authority when they detained him in Bailey
County; (2) a citizenâs cell phone tip was insufficient to provide probable cause for his
detention; and (3) a county-line policing agreement between Bailey and Cochran counties was
insufficient to vest jurisdiction in the Cochran County Deputies at the time of Appellantâs
detention. We affirm. 
Background
Â Â Â Â Â Â Â Â Â Â Â On November 22, 2006, Cochran County Deputy Sheriff George De La Cruz and
Deputy Joe Orosco were on patrol in Morton, Texas. They received a call from their
dispatcher describing a reckless driver, possibly intoxicated, traveling south toward Morton
on Highway 214. The dispatcher indicated the driver was located at the intersection of FM
54 and Highway 214 approximately eight miles north of the Cochran County line in Bailey
County. The dispatcher described the car as a maroon, two-door vehicle and gave them the
license plate number. The dispatcherâs information came from a cell phone tip from a second
driver following the maroon car. 
Â Â Â Â Â Â Â Â Â Â Â De La Cruz and Orosco headed north on Highway 214. Approximately one mile north
of the Cochran-Bailey County line, in Bailey County, they spotted a car matching the citizenâs
description headed south. The car first drifted into their lane of traffic and then off the
roadway onto the shoulder. The car then came back onto the roadway and drifted back onto
the shoulder a second time. The deputies passed the car and turned around. They verified
that the carâs license number matched the number described by the dispatcher and pulled the
car over based upon the citizenâs tip and the driverâs erratic behavior. 
Â Â Â Â Â Â Â Â Â Â Â De La Cruz and Orosco approached the vehicle and smelled alcohol when they were
close to Appellant. After Appellant got out of the car, he was handcuffed. A man stopped by
the roadside and identified himself as the person who phoned in the tip. He gave the deputies
his name, phone number, driverâs license information, and stated he had been following
Appellant the entire time. The dispatcher informed them a Bailey County Deputy was en route
to the scene. 
Â Â Â Â Â Â Â Â Â Â Â No field sobriety tests were administered, however, alcoholic beverages were
discovered inside the car and its trunk compartment. When the Bailey County Deputy arrived,
she took the information on the person who supplied the tip, placed Martinez in her cruiser,
and transported him to the Bailey County Jail for processing. 
Â Â Â Â Â Â Â Â Â Â Â De La Cruz and Orosco testified to a âworking agreementâ or âpolicyâ between Cochran
and Bailey Counties whereby each county assisted the other when there was an âemergency
callâ related to an incident located near the county-line such as a car accident or suspicious
vehicle. In this instance, they estimated their arrival preceded the Bailey County Deputy by
approximately seventeen minutes. 
Â 

Discussion
Â Â Â Â Â Â Â Â Â Â Â Appellant contends evidence of his intoxication should be suppressed because the
Cochran County Deputies were out of their home jurisdiction when he was stopped, and no
exception in article 14.03 of the Code of Criminal Procedure


 permitted the deputies to detain
him. Appellant next asserts, even if the deputies were empowered by article 14.03, the
Cochran County Deputies lacked probable cause to detain him because the information
provided by the citizen informant was insufficient to justify his detention. Finally, he asserts
the Inter-County Policing Agreement cannot provide the justification necessary for his
detention. 
Standard of Review
Â Â Â Â Â Â Â Â Â Â Â A trial courtâs ruling on a motion to suppress is reviewed for abuse of discretion. 
Balentine v. State, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002). When, as here, no findings
of fact were requested nor filed, we view the evidence in the light most favorable to the trial
courtâs ruling and assume the trial court made implicit findings of fact supported by the record. 
See State v. Ross, 32 S.W.3d 853, 855-56 (Tex.Crim.App. 2000). If the trial courtâs decision
is correct on any theory of law applicable to the case, it will be sustained. Armendariz v.
State, 123 S.W.3d 401, 404 (Tex.Crim.App. 2003). Additionally, the legal question whether
the totality of circumstances justified the officerâs actions is reviewed de novo. Hudson v.
State, 247 S.W.3d 780, 784 (Tex.App.âAmarillo 2008, no pet.). 
Issues One and Two: Traffic Stop and Detention Pursuant to Citizenâs Tip
Â Â Â Â Â Â Â Â Â Â Â No one disputes that the Cochran County Deputies were out of their jurisdiction when
they stopped and detained Appellant. Generally, âa peace officer is a peace officer only while
in his jurisdiction and when the officer leaves that jurisdiction, he cannot perform the functions
of his office.â Thomas v. State, 864 S.W.2d 193, 196 (Tex.App.âTexarkana 1993, pet. refâd). 
Nevertheless, there are statutory exceptions to this general premise. Article 14.03 states, in
pertinent part, as follows:
Â 
(d) A peace officer who is outside his jurisdiction may arrest, without warrant,
a person who commits an offense within the officerâs presence or view, if the
offense is a felony, a violation of Chapter 42 or 49, Penal Code, or a breach of
the peace.[


] A peace officer making an arrest under this subsection shall, as
soon as practicable after making the arrest, notify a law enforcement agency
having jurisdiction where the arrest was made. The law enforcement agency
shall then take custody of the person committing the offense and take the
person before a magistrate in compliance with Article 14.06 of this code.
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â * * *
Â 
(g)(1) A peace officer listed in Subdivision (1), (2), or (5), Article 2.12,[


] who is
licensed under Chapter 1701, Occupations Code, and is outside of the officerâs
jurisdiction may arrest without a warrant a person who commits any offense
within the officerâs presence or view, other than a violation of Subtitle C, Title
7, Transportation Code.[


]
Â 
Â Â Â Â Â Â Â Â Â Â Â An âarrestâ under article 14.03 is not limited to a formal, custodial arrest. See State v.
Kurtz, 152 S.W.3d 72, 79 (Tex.Crim.App. 2004). The provisions of article 14.03 also apply
when an officer, outside of his jurisdiction, makes a Terry stop.


 See Brother v. State, 166
S.W.3d 255, 259-60 (Tex.Crim.App. 2005), cert. denied, 546 U.S. 1150, 126 S.Ct. 1172, 163
L.Ed.2d 1129 (2006). Thus, if a peace officer is outside the officerâs home jurisdiction and has
knowledge that, when combined with the officerâs personal observations, causes the officer
to believe an offense is being committed in the officerâs presence, then the officer may lawfully
detain or arrest that suspect. Id. at 257-58, 260; Leonard v. State, 135 S.W.3d 98, 103
(Tex.App.âTexarkana 2004, pet. refâd). 
Â Â Â Â Â Â Â Â Â Â Â Thus, while the facts known to the officer must amount to more than a mere hunch or
suspicion, Davis v. State, 947 S.W.2d 240, 244 (Tex.Crim.App. 1997), the factual basis for
the traffic stop or detention need not arise solely from the officerâs personal observation, but
may be supplied by information from another person such as an informant. Brother, 166
S.W.3d at 257. Whether the citizen-informant is reliable is âgenerally shown by the very
nature of the circumstances under which the incriminating information became known to him
or her.â Id. at 258.
Â Â Â Â Â Â Â Â Â Â Â Here, the dispatcher relayed information to the deputies obtained from a citizenâs cell
phone tip describing a reckless driver that was possibly intoxicated. The citizenâs tip gave an
accurate description of the car, its color, license number, and location. The deputies then
identified a car matching the description and license plate number at the location described. 
The deputies observed the car swerve into the oncoming lane of traffic and drift from its lane
back and forth into and out of the shoulder. De La Cruz testified he stopped Appellant
because his observations corroborated the citizenâs tip that Appellant was driving recklessly
while intoxicated. 
Â Â Â Â Â Â Â Â Â Â Â After the deputies stopped Appellantâs car, smelled alcohol on his person, and secured
him, the citizen stopped, identified himself as the person who phoned in the tip, gave his
driverâs license information, and indicated he had been following Appellant the entire time. 
Thereafter, the deputies searched Appellantâs car, found alcoholic beverages in the interior
and trunk compartment and awaited the arrival of the Bailey County Deputy. 
Â Â Â Â Â Â Â Â Â Â Â Unsolicited information regarding a crime in progress provided by a citizen who has
no relationship with the police, provides detailed information, and makes himself accountable
by providing contact information is sufficiently reliable to warrant an officer to reasonably
conclude that a temporary detention is justified. Brother, 166 S.W.3d at 258, 259 (collected
cases cited therein). Because those circumstances are present here, the deputies did not
abuse their discretion in determining that the citizenâs tip was reliable. Moreover, the deputies
corroborated the citizenâs information through personal observation of Appellantâs erratic
driving. 
Â Â Â Â Â Â Â Â Â Â Â Under similar circumstances, Texas courts have upheld traffic stops and/or subsequent
DWI arrests by peace officers outside their jurisdictions under article 14.03. See id. at 257
n.1, 258-60 (citizenâs detailed report without on-site corroboration by officer out of his
jurisdiction sufficient to establish reasonable suspicion for officer to stop or probable cause
to arrest for DWI). See also State v. Purdy, 244 S.W.3d 591, 593-95 (Tex.App.âDallas 2008,
no pet.); State v. Nelson, 228 S.W.3d 899, 901-05 (Tex.App.âAustin 2007, no pet.); Mitchell
v. State, 187 S.W.3d 113, 117-18 (Tex.App.âWaco 2006, pet. refâd); Leonard, 135 S.W.3d
at 100-02. 
Â Â Â Â Â Â Â Â Â Â Â Appellant contends the deputies lacked authority to detain him under article 14.03 (d)
or (g)(1) because the only offenses he may have committed in their presence were traffic
violations. Ostensibly, Appellant contends he was stopped for committing the traffic
violations of improperly driving on the roadâs shoulder and/or improperly entering the lane of
oncoming traffic. See Tex. Transp. Code Ann. Â§Â§ 545.058, 545.060 (Vernon 1999). In
support, Appellant relies on State v. Kurtz, 111 S.W.3d 315, 320 (Tex.App.âDallas 2003),
affâd, 152 S.W.3d 72 (Tex.Crim.App. 2004). 
Â Â Â Â Â Â Â Â Â Â Â In Kurtz, a police officer from the City of Plano observed defendantâs car cross the right
lane onto the improved shoulder of the highway and cross from the shoulder to the lane and
back again several times while driving in the City of Frisco. While he was outside the
geographic limits of his jurisdiction, the officer stopped the defendant based solely on the
traffic violations. When the officer approached defendant, he smelled evidence of intoxication
and arrested him for driving while intoxicated. Because the officer originally stopped
defendant solely for a traffic violation, and was unaware of the commission of any offense of
driving while intoxicated until after the stop when he approached the driver, the Court of
Criminal Appeals held the evidence of intoxication had to be suppressed because the officer
was out of his jurisdiction and without authority to make the initial traffic stop under either
article 14.03 (d) or (g)(1). Kurtz, 152 S.W.3d at 79-80. The Court found there was an
unlawful detention because the officer did not know the felony offense of driving while
intoxicated was being committed in his âpresence or viewâ until after he stopped the driver for
a traffic violation. Id. 
Â Â Â Â Â Â Â Â Â Â Â Kurtz is distinguishable from this case because the traffic stop in Kurtz was based
solely on a traffic violation. In that opinion, the Court expressly stated that it was not
considering a fact scenario where an officer acts to arrest based upon a breach of the peace. 
See Kurtz, 152 S.W.3d at 79. This case is more like Brother, because here, the citizenâs
detailed tip indicating that Appellant was driving recklessly, possibly intoxicated, was
corroborated by Appellantâs traffic violations observed by De La Cruz leading him to have a
reasonable suspicion Appellant was intoxicated. See Brother, 166 S.W.3d at 260. It was
because De La Cruz had a reasonable suspicion that Appellant was driving while intoxicated
that he stopped Appellantâs car. Thus, article 14.03(g) did not prohibit the detention


 by the
Cochran County Deputies because Appellant was not stopped solely for a traffic violation. 
Â Â Â Â Â Â Â Â Â Â Â The detailed citizenâs tip coupled with the deputiesâ personal observations leads us to
conclude that, not only did the deputies have reasonable suspicion to stop Appellantâs car,
but also probable cause to make the arrest for driving while intoxicated. See Brother, 166
S.W.3d at 258-59 (Tex.Crim.App. 2005). âA stop based on facts supplied by a citizen-eyewitness when adequately corroborated by the officer, does not run afoul of the Fourth
Amendment.â Nelson, 228 S.W.3d at 903 (citing Brother, 166 S.W.3d at 259). Issues one
and two are overruled. 
Issue Three: Inter-County Policing Agreement
Â Â Â Â Â Â Â Â Â Â Â Having determined Appellant was properly detained under article 14.03(d) and (g)(1),
Appellantâs third issue, whether the Inter-County Policing Agreement constituted an alternative
justification for Appellantâs detention, is pretermitted. 
 Conclusion 
Â Â Â Â Â Â Â Â Â Â Â Accordingly, the trial courtâs judgment is affirmed. 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Patrick A. Pirtle

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Â 
Â 
Publish.



nsi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-11-0070.CV%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-11-0070.CV%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-11-0070.CV%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-11-0070.CV%20opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-page-numbers:1;
 mso-title-page:yes;
 mso-footer:url("07-11-0070.CV%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-11-0070.CV%20opinion_files/header.htm") f2;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->








NO. 07-11-00070-CV

Â 

IN THE COURT OF APPEALS

Â 

FOR THE
SEVENTH DISTRICT OF TEXAS

Â 

AT
AMARILLO

Â 

PANEL A

Â 



APRIL
13, 2011

Â 



Â 

IN RE JACKIE LEE BIBBS, RELATOR



Â 



Â 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

Â 

Â 

MEMORANDUM OPINION

Â 

Relator, Jackie Lee Bibbs, has filed an
Application for Leave to File Writ of MandamusÂ requesting this Court abate
Âthis cause[1]
back to the trial court for evidentiary/admonishment hearings.ÂÂ  We deny the petition.

Texas
Rule of Appellate Procedure 52.3[2]
identifies the requirements for a petition for writ of mandamus filed in this
Court.[3]Â  Bibbs has failed to comply with these requirements.Â  Rule 52.3(a) requires that a petition must
include a complete list of all parties and the names and addresses of all
counsel.Â  Bibbs does not include any
such list.Â  Bibbs
identifies the respondent as Peggy Culp, the Clerk of the Seventh Court of
Appeals, and alleges that Culp has breached her ministerial duties in regard to
BibbsÂs direct appeal; however, the specific relief
requested by Bibbs (abatement and, presumably, remand
to the trial court) would appear to request that this Court issue a writ of
mandamus against itself.Â  Rule 52.3(b)
requires that the petition include a table of contents with references to the
pages of the petition and an indication of the subject matter of each issue or
point raised in the petition.Â  BibbsÂs petition
includes no table of contents.Â  Rule
52.3(c) requires that a petition include an index of authorities in which all
authorities cited in the petition are arranged alphabetically and the page(s)
upon which the authorities are cited is indicated.Â  Bibbs=s petition includes no index of
authorities.Â  Rule 52.3(d) requires a
statement of the case that includes a concise description of the nature of the
underlying proceeding.Â  Bibbs=s petition does not contain a
statement of the case, and does not include a concise description of the nature
of the underlying proceeding.Â  Rule
52.3(e) requires the petition include a statement regarding the basis of this
CourtÂs jurisdiction.Â  BibbsÂs petition does not include a jurisdictional
statement.[4]Â  Rule 52.3(f) requires the petition include a
concise statement of all issues or points presented for relief.Â  BibbsÂs petition
includes no such statement.Â  Rule 52.3(g)
requires the petition include a statement of facts supported by citation to
competent evidence included in the appendix or record.Â  BibbsÂs petition
does not include a statement of facts.Â 
Rule 52.3(h) requires a clear and concise argument for the contentions
made, with appropriate citations to authorities.Â  BibbsÂs argument is
not clear nor does it identify any authority that would authorize the relief
sought.Â  Rule 52.3(i)
requires the petition include a short conclusion that clearly states the nature
of the relief sought.Â  BibbsÂs petition does not clearly state the nature of the
relief sought in that it identifies the Clerk of this Court as the respondent,
but then requests this Court issue a writ of mandamus ordering his pending
criminal appeal abated to the trial court.Â 
Clearly, abating and remanding a pending appeal is beyond the authority
of an appellate court clerk.Â  Finally,
Rule 52.3(k)(1)(A) requires that the appendix to the
petition include a certified or sworn copy of any order complained of, or other
document showing the matter complained of.Â 
Bibbs has not included an appendix to his petition.Â  As each of these items are
required in a petition for writ of mandamus and Bibbs
has failed to comply with these requirements, we may not grant the relief that
he requests.

Additionally,
Texas Rule of Appellate Procedure 9.5 requires that, at or before the time that
a document is filed with this Court, a copy of the
document must be served on all parties to the proceeding.Â  BibbsÂs petition
includes a certificate of service, but it indicates only that a copy of the
petition was served on the Tarrant County District Clerk.Â  Nothing in the petition identifies the
Tarrant County District Clerk as a party to this original proceeding.Â  There is no certification that the petition
was served on the named respondent or any other party to this original
proceeding.[5]

Finally, a liberal
construction of BibbsÂs petition reveals that the
only parties against whom Bibbs could arguably be
requesting this Court to issue writ of mandamus are the Clerk of this Court,
the Tarrant County District Clerk, and this Court itself.Â  A court of appeals has authority to issue
writs of mandamus against district and county court judges within the court of
appeals=s district and all writs necessary to
enforce its jurisdiction.Â  Tex. Gov=t Code Ann. ' 22.221(a), (b) (Vernon 2004).Â  Clearly, none of the parties against whom Bibbs might be seeking mandamus relief falls within the
express statutory grant of our mandamus jurisdiction.Â  As such, we may only issue a writ of mandamus
against these parties if the relator shows that
issuance of the writ is necessary to enforce our jurisdiction.Â  In re Cummins, No.
07-04-0354-CV, 2004 Tex.App. LEXIS 8107, at *2 (Tex.App.BAmarillo Sept. 2, 2004, orig.
proceeding) (mem. op.); In re Coronado, 980
S.W.2d 691, 692 (Tex.App.BSan Antonio 1998, orig.
proceeding).Â  BibbsÂs
petition makes no effort to make such a showing.

As Bibbs=s petition for writ of mandamus does
not comply with the requirements of Rule 52.3, we deny the petition.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Mackey
K. Hancock

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice








Â 











[1] We presume that BibbsÂs
reference to Âthis causeÂ is a reference to his pending criminal appeal in
Cause Number 07-10-0300-CR, rather than the present original proceeding.

Â 





[2] Further citation of Texas Rules of
Appellate Procedure will be by reference to ARule __.@





[3] While BibbsÂs filing is
denominated as an application for leave to file a writ of mandamus, we construe
it to be a petition requesting this Court issue a writ of mandamus.





[4] It appears that Bibbs
attempted to identify the basis of this CourtÂs jurisdiction by citing statutes
and rules that Bibbs contends were violated.Â  Not every violation of a statute or rule will
authorize the extraordinary relief of mandamus.Â 
Further, none of the statutes or rules cited by Bibbs
are applicable to the complaints Bibbs
asserts in his petition.





[5] As Bibbs failed to include
a complete list of all parties and the names and addresses of all counsel in
his petition and based on the apparent conflict between the named respondent
and the relief requested, we are uncertain who the proper parties to this
original proceeding might be.