# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00062-CR

**Stephen Alexander Hedrick, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY
### NO. C1CR06755284, HONORABLE NANCY WRIGHT HOHENGARTEN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Stephen Alexander Hedrick pleaded no contest to the offense of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04 (West 2003). The trial court assessed punishment at 120 days in jail and a $2,000 fine but suspended imposition of the sentence and placed Hedrick on community supervision for eighteen months. In a single issue on appeal, Hedrick challenges the trial court's denial of his motion to suppress evidence. We will affirm the judgment.

## BACKGROUND

At the hearing on Hedrick's motion to suppress, the trial court heard evidence that, on December 15, 2006, at approximately 11:50 p.m., Austin Police Department Officer Alan Goodwin, who was on foot patrol, was "flagged down by a pedicab driver regarding a person in a vehicle who was making an obscene gesture at her." The person in the vehicle allegedly making the obscene gesture was Hedrick. Officer Goodwin testified that he personally observed the gesture.

He explained that Hedrick was "actually up out of his seat and the steering wheel was about even with his midsection and he was actually up on the dashboard of his vehicle and had his hand up against the windshield giving the pedicab driver the finger."

Officer Goodwin testified that he "walked over to the driver's side door of Mr. Hedrick's vehicle and [] contacted him." On cross-examination, Goodwin provided the following details about his initial contact with Hedrick:

[Prosecutor]: Officer, when you first came into contact with the defendant, was his car moving or was it already stopped?

[Goodwin]: His car was already stopped.

[Prosecutor]: Okay. So . . . tell us about the encounter. Did you walk up and knock on the window or how did it happen?

[Goodwin]: Well, like I said, I was flagged down by the pedicab driver. She motioned toward[] the vehicle. . . . And so I went over and I—I contacted him. I don't recall if the window was down or if I knocked on the window or how exactly I came into contact with him.

[Prosecutor]: But at any rate, he rolled down the window and talked to you?

[Goodwin]: He did, yes.

Later in his testimony, Officer Goodwin explained where Hedrick was located when he made contact with him:

[Prosecutor]: And you said this was actually on Sixth Street, right?

[Goodwin]: This is actually on Sixth Street at the intersection of Sixth and San Jacinto.

[Prosecutor]: Okay. Was . . . he inside the barricades, outside the barricades?

2

[Goodwin]: He was inside the barricades.

[Prosecutor]: Where Sixth Street's blocked off?

[Goodwin]: Yes.


On redirect, defense counsel sought to clarify the above testimony:

[Defense counsel]: You indicated his car was stopped. Was he—was he parked? Was he sitting in a parked car?

[Goodwin]: No, he was not.

[Defense counsel]: He was sitting in a vehicle. Was the vehicle in a lane of traffic?

[Goodwin]: Yes, it was inside the—inside the intersection.

[Defense counsel]: All right. And the vehicle is running and everything, correct?

[Goodwin]: Yes, sir.

[Defense counsel]: You had—and I'm assuming you got him out of the car. You had him turn off his—park his vehicle or just turn off his vehicle or—

[Goodwin]: I had him step out of the vehicle and I started dealing with him directly. There [were] other officers present that took care of the vehicle from that point forward.

[Defense counsel]: And I was just confused when you indicated he was stopped. It wasn't like he was pulled over and parked sitting in a parked car, he was actually in a vehicle that's running, with the engine running and—

[Goodwin]: I had actually observed him operate his vehicle prior to making contact with him.

3

[Defense counsel]:    And he's—like I said, he's in a lane of traffic. I guess at some point he—had you not come up and talked to him, he could have just driven away?

[Goodwin]:    Yes, that's correct.

Officer Goodwin explained that his initial reason for contacting Hedrick was to investigate the offense of disorderly conduct. *See* Tex. Penal Code Ann. § 42.01(a)(2) (West Supp. 2008). However, Goodwin testified, after he contacted Hedrick, he "immediately smelled an odor of alcohol and just proceeded from there." Goodwin added, "it was a very strong, profound odor of alcohol." At this point, Goodwin had Hedrick exit his vehicle. Goodwin testified that Hedrick's "clothing was disarranged, his shirt was half tucked and half untucked, I noticed that his eyes were watery and bloodshot. I noticed his pupils were very dilated, his speech was slurred, confused. His balance was poor, he swayed as he stood. He kind of—his walking was unsure." Goodwin proceeded to have Hedrick perform the standard field sobriety tests.[1] Based on his observations of Hedrick and Hedrick's performance on the field sobriety tests, Goodwin arrested him for driving while intoxicated.

Hedrick moved to suppress the above evidence of his intoxication on the basis that, at the time Officer Goodwin first contacted Hedrick, he did not have reasonable suspicion to believe that Hedrick had committed the offense of disorderly conduct. In response, the State primarily argued that reasonable suspicion was not necessary because Officer Goodwin's initial contact with Hedrick was merely an encounter. The prosecutor explained:

---

[1]    Specifically, the horizontal gaze nystagmus (HGN), the walk-and-turn, and the one-leg stand.

4

Your Honor, it's the State's position that this was a consensual encounter from the very beginning, as [Goodwin] testified today. The car was not parked, but it was stopped on Sixth Street. [Hedrick] had apparently driven past the barricades and he . . . at least had his foot on the brake, sitting still when the officer first contacted him. So it's our position, as defense counsel just said himself,[2] that the defendant could have driven away, you know, at that point [Goodwin] comes up to the window and asks him what's going on.

Alternatively, the State argued that, if Hedrick was initially detained, Goodwin had reasonable suspicion to believe that Hedrick had committed the offense of disorderly conduct.

The trial court denied the motion to suppress on the ground that it believed Hedrick's conduct constituted disorderly conduct. Subsequently, Hedrick pleaded no contest to the offense of driving while intoxicated and was sentenced to eighteen months' probation. This appeal followed.

**STANDARD OF REVIEW**

A trial court's ruling on a motion to suppress is reviewed on appeal for abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). In other words, the trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any applicable legal theory. *Id.* That rule holds true even if the trial court gave the wrong reason for its ruling. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give trial courts almost complete deference in determining

---

[2] The prosecutor was referring to defense counsel's comment to the trial court moments earlier that Hedrick was "sitting in his car, the engine's running, he's able to drive away."

5

historical facts, but we review de novo the trial court's application of the law. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).

## ANALYSIS

Hedrick asserts that the trial court "erred" in denying his motion to suppress because his conduct, "although rude, offensive or even vulgar, did not constitute a crime." According to Hedrick, "There is no evidence in the record that [his] gesture had a tendency to incite an immediate breach of the peace." In response, the State argues that "Officer Goodwin's initial contact with Hedrick amounted to an encounter, and did not rise to the level of a detention until the officer smelled the overpowering odor of alcoholic beverages on Hedrick's breath and asked him to step out of the vehicle so that the officer could investigate intoxication."[3]

Encounters are distinct from detentions. An investigative detention occurs when a police officer restrains a person's freedom of movement, either by physical force or a show of authority. *State v. Griffey*, 241 S.W.3d 700, 705 n.6 (Tex. App.—Austin 2007, pet. ref'd) (citing *Johnson v. State*, 912 S.W.2d 227, 234 (Tex. Crim. App. 1995)). An investigative detention constitutes a seizure and implicates constitutional safeguards. *Id*. (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). Investigative detentions require reasonable suspicion.

---

[3] The State also argues that, if Hedrick was detained, Officer Goodwin had reasonable suspicion to believe that he committed the offense of disorderly conduct and, in the alternative, that Goodwin had reasonable suspicion to believe that Hedrick had committed offenses other than disorderly conduct. Because we ultimately conclude that the trial court's denial of the motion to suppress is reasonably supported by the record under the theory that Goodwin's initial contact with Hedrick was merely an encounter, we need not address these contentions. *See Armendariz v. State*, 123 S.W.3d 401, 405 (Tex. Crim. App. 2003).

*See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) ("An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law."); *State v. Nelson*, 228 S.W.3d 899, 902 (Tex. App.—Austin 2007, no pet.) ("A warrantless automobile stop is a Fourth Amendment seizure analogous to a temporary detention, and it must be justified by reasonable suspicion."). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007) (citing *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)).

In contrast to detentions, encounters are consensual interactions between citizens and police that do not require reasonable suspicion and do not implicate constitutional rights. *Florida v. Royer*, 460 U.S. 491, 497-98 (1983). Encounters occur when police officers approach an individual in a public place to ask questions, request identification, or request consent to search as long as the interaction is consensual—that is, as long as an officer does not convey a message that compliance with the officer's request is required. *Florida v. Bostick*, 501 U.S. 429, 434-35 (1991). In other words, "[p]olice officers 'do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.'" *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002) (quoting *Bostick*, 501 U.S. at 434). To determine whether an encounter between a police officer and a citizen rises to the level of a detention, the inquiry is whether,

7

"taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *State v. Garcia-Cantu*, 253 S.W.3d 236, 242 (Tex. Crim. App. 2008) (citing *Kaupp v. Texas*, 538 U.S. 626, 629 (2003)).

In this case, our inquiry is focused on the circumstances surrounding Goodwin's initial contact with Hedrick. The circumstances include the following:

- Goodwin approached Hedrick while on foot patrol; he was not in a police vehicle.

- Goodwin approached Hedrick on a public street, specifically, at the intersection of Sixth Street and San Jacinto Boulevard in downtown Austin.

- Hedrick's vehicle, although not "parked," was "stopped" in the intersection, inside barricades that were apparently blocking off Sixth Street at the time. Goodwin agreed that, had he not come up and talked to him, Hedrick could have just driven away. In fact, the vehicle's engine was running, and Goodwin testified that, prior to contacting Hedrick, he had observed Hedrick operating his vehicle.

- Goodwin could not remember if the window was already open or if he knocked on the window when he contacted Hedrick. At any rate, Goodwin testified, Hedrick rolled down his window and talked to him.

Considering the above circumstances surrounding the encounter, we conclude that the record supports a finding by the trial court that Goodwin's conduct did not rise to the level of communicating to a reasonable person that he was not at liberty to ignore the police presence and go about his business. *See id*. Goodwin walked up to Hedrick's vehicle on a public street while the engine of Hedrick's vehicle was running. Although the vehicle was "inside the barricades" blocking off Sixth Street at the time, there is nothing in the record indicating that these barricades would have

8

prevented Hedrick from driving away. In fact, Goodwin testified that Hedrick could have driven away, and he explained that he had observed Hedrick operate his vehicle prior to contacting him. Nor does the record reflect that there was any police vehicle present that might have prevented Hedrick from driving away. *See Franks v. State*, 241 S.W.3d 135, 142 (Tex. App.—Austin 2007, pet. ref'd) (in case involving defendant stopped at rest area and approached by officer, explaining that "nothing in the record suggests" that defendant was prevented from leaving by "simply driving forward"). Also, although Goodwin could not remember if he knocked on the window of Hedrick's vehicle or if it was already rolled down when he approached him, there is no indication in the record that Goodwin ordered Hedrick to roll down his window. *See Ebarb v. State*, 598 S.W.2d 842, 849 (Tex. Crim. App. 1980) (op. on reh'g) (holding that "when a person is sitting in a parked car and a police officer orders him to roll down the window or to open the door," detention has occurred).

Circumstances similar to the above have repeatedly been held to constitute an encounter rather than a detention. *See, e.g.*, *Merideth v. State*, 603 S.W.2d 872, 873 (Tex. Crim. App. 1980) (holding that no detention occurred when officer approached defendant's vehicle and knocked on window); *State v. Bryant*, 161 S.W.3d 758, 762 (Tex. App.—Fort Worth 2005, no pet.) (holding that officer was not required to have reasonable suspicion to approach defendant's car and knock on his window); *Ashton v. State*, 931 S.W.2d 5, 7 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (holding that no investigatory detention occurred when unidentified officer approached defendant, who was sitting in parked car in public place, and

asked her to roll down window).[4] There are no facts present here that distinguish this case from the above cases. Thus, the record supports a finding by the trial court that Officer Goodwin's initial contact with Hedrick was merely an encounter.

We conclude that "the trial court's ruling denying appellant's motion to suppress was supported by the record and was correct under a theory of law applicable to the case." *Armendariz*, 123 S.W.3d at 405. Accordingly, this Court is "obligated to uphold the trial court's ruling." *Id.*

We overrule Hedrick's sole issue on appeal.

## CONCLUSION

We affirm the judgment of the trial court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed:   August 28, 2008

Do Not Publish

_____

[4] *See also Hurley v. State*, No. 03-07-00433-CR, 2008 Tex. App. LEXIS 4820, at *15 (Tex. App.—Austin June 26, 2008, no pet. h.) (not designated for publication) (holding that initial interaction between officer and defendant, in which officer approached defendant's car and asked her questions, was encounter); *Cervas v. State*, No. 2-04-463-CR, 2005 Tex. App. LEXIS 2736, at *4 (Tex. App.—Fort Worth April 7, 2005, no pet.) (mem. op., not designated for publication) (holding that initial interaction between officer and defendant, in which officer approached defendant's vehicle and defendant rolled down her window to speak with officer, was encounter); *Lewis v. State*, No. 05-04-00275-CR, 2005 Tex. App. LEXIS 1753, at *5 (Tex. App.—Dallas March 8, 2005, no pet.) (not designated for publication) (holding that initial interaction was encounter when officers merely approached defendant's vehicle and defendant voluntarily put his hands out window).