# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00471-CR

**Darrell Reesing, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE COUNTY COURT AT LAW NO. 2 OF BELL COUNTY
## NO. 2C02-01661, HONORABLE JOHN BARINA, JR., JUDGE PRESIDING

## O P I N I O N

Appellant Darrell Reesing pleaded no contest to driving while intoxicated. *See* Tex. Pen. Code Ann. § 49.04 (West 2003). The court adjudged him guilty and sentenced him to three days in jail and a $2000 fine, as called for in a plea agreement. The only issue on appeal is whether the court erred by overruling appellant's pretrial motion to suppress evidence. We find no error and affirm the judgment of conviction.

On the evening of February 14, 2002, Arthur Hankins stopped at a Belton Wal-Mart store to purchase a Valentine's Day card. As he was looking at the display of cards, a man he identified as appellant approached and stood beside him "unusually close." Appellant smelled strongly of alcoholic beverage, and he made a tasteless remark to Hankins regarding a card he was seeking. Hankins believed appellant was intoxicated.

When Hankins returned to his pickup truck, he called 911 on his cell phone from the parking lot. He told the dispatcher what had happened in the store and expressed his concern that appellant was intoxicated and might be driving. As he spoke to the dispatcher, Hankins saw appellant leave the store, get into a grey and black Cadillac, and drive away. Hankins reported this to the dispatcher, then followed as appellant drove north on Main Street and then turned west on Lake Road. Hankins remained on the phone and continued to report his observations. He noticed that appellant was driving considerably below the speed limit. Appellant turned left into a video store parking lot, crossing five lanes of traffic as he did so. He stopped briefly, then left the lot and began to drive in the direction from which he had come. When Hankins saw a police officer stop appellant, he also stopped nearby and waited. When the dispatcher told him to do so, Hankins drove to the video store parking lot and gave a statement to one of the officers.

Belton Police Officer Jerome Simpson was dispatched to the Wal-Mart in response to Hankins's call. He testified:

> Dispatch—the radio operator of Bell County—called me on the radio and told me that there was an intoxicated person in—person who appeared to be drunk from what the caller had said, in Wal-Mart in Belton. And the person was—who called 911 was very concerned about this individual. He had been—from what the person said to dispatch—and dispatch told me he was being obscene and the guy was—was afraid of him basically.

Before Simpson got to the Wal-Mart, he was told that the suspect had left the store and was driving north on Main. He was given a description of the suspect and his car, including the license plate number. Simpson was regularly updated regarding appellant's activities: "They were continuously giving information. The person who called was still on their cell phone the whole time, they never

hung up." Simpson arrived at the video store on Lake Road as appellant was entering the parking lot. The officer pulled into the lot behind appellant and confirmed the license plate number. Appellant paused in the lot "for what [Simpson] considered to be a rather long time" given the absence of traffic on Lake Road at that time. When appellant left the lot, Simpson turned on his emergency lights. He testified that he stopped appellant because: "I was thinking that the person was probably intoxicated, with all the information that I had received from the witness, the way he pulled into the parking lot, made the turn, the pausing and hesitating when he was in the driveway, and the failure to signal intent [to turn]." Appellant immediately stopped.

Simpson testified that appellant appeared to be intoxicated, but another officer who arrived soon after the stop actually performed the field sobriety tests and made the arrest. Simpson took a written statement from Hankins at the scene.

Appellant contends Officer Simpson did not have a lawful basis for stopping him, and therefore all evidence obtained as a result of the stop should have been suppressed. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a) (West Supp. 2004). Because the facts are undisputed and the court's ruling does not turn on the credibility of a witness, we will review *de novo* the order overruling the motion to suppress. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

A police officer may stop and briefly detain a person for investigative purposes if the officer, in light of his experience, has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). A temporary detention is justified when the detaining officer has specific articulable facts which, taken together with rational inferences from those facts,

3

lead him to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Id.*

The facts before us are very similar to those before our sister court in *State v. Stolte*, 991 S.W.2d 336 (Tex. App.—Fort Worth 1999, no pet.). In that case, a man driving home from work saw another vehicle being driven in an erratic and dangerous manner, and he suspected that the driver of the vehicle was intoxicated. *Id.* at 340. He called 911 on his cell phone and reported what he had seen, giving a description of the suspect vehicle. *Id.* As directed by the dispatcher, the informant continued to follow the suspect and report his location. *Id.* After the suspect was stopped by the police, the informant remained at the scene. *Id.*

The issue in *Stolte*, as in the cause now before us, was whether there had been a reasonable basis for stopping and detaining the driver of the suspect vehicle. The trial court ruled that the stop was unlawful and granted the defendant's motion to suppress, but the court of appeals reversed. Because we find the court's analysis to be persuasive, we quote it at length:

> The reasonableness of a given detention will turn on the totality of the circumstances in that particular case. A tip by an unnamed informant of undisclosed reliability standing alone rarely will establish the requisite level of suspicion necessary to justify an investigative detention. There must be some further indicia of reliability, some additional facts from which a police officer may reasonably conclude that the tip is reliable and a detention is justified. The informant's veracity, reliability, and basis of knowledge are highly relevant in determining the value of the caller's report. . . .
>
> Corroboration by the law enforcement officer of any information related by the informant may increase the reliability of the information. However, "corroboration" in this sense does not mean that the officer must personally observe the conduct that causes him to reasonably suspect that a crime is being, has been, or is about to be committed. Rather, corroboration refers to whether the police officer, in light of the

4

circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified.

Where the reliability of the information is increased, less corroboration is necessary. A detailed description of the wrongdoing, along with a statement that the event was observed firsthand, entitles an informant's tip to greater weight. So does the fact that the person put himself in a position to be held accountable for his intervention. Furthermore, a person who is not connected with the police or who is not a paid informant is considered inherently trustworthy when he advises the police that he suspects criminal activity has occurred or is occurring.

. . . .

Kratky [the officer] knew that he could learn the identity of the citizen-informant who had called in the report. Likewise, Cowell [the citizen-informant] undoubtedly knew that by calling the police and stopping at the scene, he was putting himself in a position to be held accountable for his intervention. In addition, Cowell told the dispatcher that he was personally watching Stolte, which entitled the police to give greater weight to the tip. Kratky also knew that the concerned citizen had remained on his cellular phone to track and report the suspect's location, which lent credence to the caller's veracity. These factors all increased the reliability of the information that Kratky received from his dispatcher.

. . . .

In this instance, the suspected offense involved an immediate threat to the public safety. Kratky, a 10-year veteran of the police force, was obviously aware of the danger that Stolte posed to both himself and other drivers if Cowell's suspicions about Stolte's inebriated state were accurate. Acting on the information he had at the time of the detention, without the benefit of hindsight, it was reasonable for Kratky to suspect that Stolte might be driving while intoxicated and to conclude that a brief detention was warranted to further investigate. Thus, in light of the totality of the circumstances, including both the important public and private interests involved, we hold that Kratky was justified in initiating an investigatory stop when he confirmed that a pickup was located where the informant indicated, which matched the description and license plate given.

*Id*. at 341-42 (citations and footnote omitted).

5

Like the officer in *Stolte*, Officer Simpson did not see appellant commit a traffic offense.[1] He knew, however, that an identified caller to 911 had encountered the suspect in the Wal-Mart and had given a detailed report explaining why he believed him to be intoxicated. Because the caller had actually spoken to appellant and smelled the alcoholic beverage on his breath, his tip was arguably more credible than the caller's tip in *Stolte*. The officer also knew that the caller had remained on his cell phone and was following the suspect to report his actions and whereabouts. That the caller was willing to identify himself, remain on the telephone, follow the suspect, and wait at the scene to give a statement lent significant weight to his tip. When Simpson arrived at the video store, appellant was there in his Cadillac just as the caller had said. Appellant's observed behavior in the lot, while not alone indicative of intoxication, gave a small additional measure of corroboration to the caller's report. Given the totality of the circumstances, we conclude that Officer Simpson had a reasonable basis for suspecting that appellant was driving while intoxicated and to stop him for further investigation.

Appellant argues that "[i]f the trial court's decision in this case is allowed to stand, it will open a Pandora's Box of miffed and disgruntled citizens making assumptions unsupported by the facts in order to get revenge or satisfaction for minor insults or impositions." But persons who make false or unsubstantiated reports to the police out of spite or a desire to cause mischief are rarely willing to identify themselves and be held accountable for their actions. This is one reason why investigatory detentions based solely on uncorroborated tips from anonymous informants are

---

[1] Appellant argues that his failure to signal his turn as he left the video store parking lot was not an offense because the parking lot is not a highway. *See* Tex. Transp. Code Ann. §§ 542.001, 545.104 (West 1999). For the purpose of this opinion, we will assume that appellant is correct.

generally considered unlawful.  *See Stewart v. State*, 22 S.W.3d 646, 648-49 (Tex. App.—Austin 2000, pet. ref'd) (anonymous tip corroborated only with respect to innocuous and easily observable details did not give officer reason to suspect that appellant was driving while intoxicated).  It is not unreasonable, however, for a police officer to rely on detailed, firsthand information received from a citizen informer who is willing to identify himself and make himself accountable for the consequences of his report.  *See Illinois v. Gates*, 462 U.S. 213, 234 (1983); *United States v. Sierra-Hernandez*, 581 F.2d 760, 763 (9th Cir. 1978); *State v. Fudge*, 42 S.W.3d 226, 246 (Tex. App.—Austin 2001, no pet.) (Patterson, J., dissenting).

The point of error is overruled and the judgment of conviction is affirmed.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   June 10, 2004

Publish

7