# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00388-CR

**Matthew Neugebauer, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2 OF HAYS COUNTY
### NO. 85415, HONORABLE LINDA RODRIGUEZ, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

After his pretrial motion to suppress evidence was overruled, appellant Matthew Neugebauer pleaded guilty to driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04 (West 2003). The court adjudged him guilty and assessed punishment at 180 days in jail and a $650 fine, but the court suspended imposition of sentence and placed appellant on community supervision. In a single point of error, appellant contends that the trial court erred by overruling the motion to suppress. We find no error and affirm the conviction.

A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). This means that the ruling will be upheld if it is reasonably supported by the record and is correct under any applicable legal theory. *Id*. The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000);

*Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give the trial court almost complete deference in determining historical facts, but we review de novo the trial court's application of the law to those facts. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Because the trial court did not make explicit findings of fact, we review the evidence in the light most favorable to the court's ruling and assume the court made findings that are supported by the record and buttress its conclusion. *Id*. at 327-28.

Guadalupe Ruiz testified that after midnight on March 17, 2007, she and her husband were traveling south on FM 1626 in Hays County when they noticed the car in front of them, also traveling south, drive onto the right shoulder of the road, then swerve back and across the road into the oncoming lane of traffic. Ruiz said that her husband, who was driving, remarked, "Oh, my gosh they're going to wreck." Using her cell phone, Ruiz called 911 to report the reckless driver.

Ruiz identified herself to the 911 operator and reported what she had seen. At the hearing, Ruiz recalled telling the operator that the suspect vehicle was a "silverish Toyota," but the recorded 911 call, which was introduced in evidence, reflects that Ruiz initially described the vehicle as a "tannish Corolla." Shortly thereafter, Ruiz told the operator that the vehicle was a silver sedan, either a Toyota or a Mazda, and in the background her husband can be heard saying that it was a Malibu. As if to explain her inability to precisely identify the make and model of the suspect car, Ruiz told the operator, "I really don't want to get too close." As Ruiz continued to speak to the operator, she reported that the suspect car was "swerving big time" and had again moved into the oncoming lane.

2

When the suspect vehicle arrived at the intersection of FM 1626 and FM 2770, Ruiz reported that it turned left, or east, toward Buda. She added, "It's the only car going that way right now." Ruiz and her husband attempted to follow, but they had to wait at the intersection and lost sight of the suspect. Ruiz testified that she and her husband drove on to Buda, but they never again saw the suspect car. Ruiz testified that a car she saw parked at a convenience store resembled the suspect vehicle, but she was not sure of this identification.

Deputy Robert Wilson testified that he was patrolling FM 2770 on the night in question when he heard a dispatch reporting a possible intoxicated driver heading east toward Buda from the FM 1626 intersection. Recordings of the police dispatches, also introduced in evidence, reflect that the dispatcher was relaying in real time the information being provided by Ruiz.[1] Wilson recalled being told that the suspect vehicle was a silver or blue four-door sedan. On the recording, the dispatcher states that the caller described the suspect vehicle as a "silver colored sedan," "unsure if a Toyota or a Chevy." Wilson testified that as he drove west on FM 2770, he noticed an eastbound car that matched the description he had been given turn into the parking lot of a closed business, stop, and turn off its lights. The evidence reflects that this car was a light blue Toyota Camry sedan. Wilson parked his patrol car behind the Camry and turned on his spotlights to illuminate the scene.

Appellant was driving the Camry. Wilson asked him to exit the car, and the officer immediately noticed signs of intoxication. Wilson administered standard field sobriety tests that confirmed his opinion that appellant was intoxicated.

_____

[1] At one point, the dispatcher states that the "caller has visual."

3

Appellant contends that Wilson's observations and the other evidence obtained that night should have been suppressed because he was unlawfully detained.[2] A police officer may stop and briefly detain a person for investigative purposes if the officer has specific articulable facts which, together with rational inferences from those facts, lead him to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). Appellant acknowledges that a citizen-informer's tip regarding erratic driving can be used to establish reasonable suspicion to make a traffic stop. *See Brother v. State*, 166 S.W.3d 255, 257-58 (Tex. Crim. App. 2005); *Reesing v. State*, 140 S.W.3d 732, 736-37 (Tex. App.—Austin 2004, pet. ref'd). He argues, however, that Ruiz's information was so lacking in detail that Wilson could not reasonably identify appellant's car as the one Ruiz was describing. Appellant points out that Ruiz did not provide the license number of the suspect vehicle or describe the driver. He calls her description of the suspect car "vague and uncertain," noting that she first said that the car was a tan Corolla, then described it as a silver Toyota or Mazda. Appellant also stresses that Ruiz failed to mention the number of doors on the suspect vehicle. Appellant adds that Wilson's own observations neither corroborated the information supplied by Ruiz nor alone gave the officer reasonable suspicion to detain appellant.

We agree that Ruiz's description of the suspect vehicle was not as detailed as in some other cases, such as *Reesing*. The events were taking place in the middle of the night in a rural area, and Ruiz and her husband were understandably reluctant to get close to a vehicle being driven in

---

[2] The parties have briefed this appeal on the assumption that appellant was detained by Wilson at the moment the officer parked his patrol car behind appellant's vehicle. We will accept this assumption for the purposes of this opinion.

such an erratic manner.[3]  Nevertheless, Ruiz and her husband were able to tell the 911 operator, and thus Wilson, that the suspect vehicle was a silver sedan, possibly a Toyota or Chevrolet, traveling east toward Buda on FM 2770 from the FM 1626 intersection.  We also know from Ruiz's recorded call that it was the "only car going that way right now," although there is no evidence that this fact was relayed to Wilson.  Given the poor lighting and the light traffic at this late hour, and keeping in mind that Wilson was receiving his information from Ruiz as she reported it, we believe that the officer was justified in his belief that appellant's light blue Toyota Camry sedan, which he first saw traveling east toward Buda on FM 2770, was the vehicle being described by Ruiz.  Appellant makes much of the fact that his car was light blue, and not silver.  Given how similar these two colors can be even in good light conditions, this discrepancy does not significantly detract from the reasonableness of Wilson's actions.[4]

Although Wilson did not see appellant commit any traffic or other criminal offense, he did see him drive into the parking lot of a closed business, stop, and turn off his lights.  Although, as appellant argues, there may be "a number of innocent reasons" why appellant would do this, we believe that under the circumstances known to Wilson, this conduct gave the officer some additional reason to suspect that appellant was the possibly intoxicated driver.

Finally, we note that two of appellant's arguments are contradicted by the record.  First, apparently to cast doubt on Ruiz's credibility, appellant argues that she "never saw Deputy

---

[3]  Wilson testified that the night was "cloudy.  It was dark and there was very little lighting around that area."

[4]  Wilson was asked, "When you say blue . . . was it like a midnight blue almost black, or is it a light blue, medium blue?"  Wilson answered, "I believe it was a light blue."

5

Wilson detain the suspect vehicle" even though she and her husband continued to drive on FM 2770 into Buda. "[S]urely," argues appellant, "Ruiz would have seen Deputy Wilson detain the suspect vehicle" under those circumstances. In fact, Ruiz was asked if, after losing sight of the suspect vehicle, she made "any observations as to the police being around or anything." She testified that she had: "I saw—There was—There's a—like a small area like a gravel pit.[5] And there was a police car there that was coming out, and it was—Instead of going to the Buda area it was going towards the Kyle area." It is reasonable to infer that the police car Ruiz saw was Wilson's. Ruiz added that she did not see what happened after that because she and her husband continued to drive toward Buda. Second, appellant argues that "there is nothing in the record establishing how much time elapsed between the time Ruiz called 911 and the time Deputy Wilson detained Appellant." In fact, the record shows that Ruiz's information was being relayed to Wilson as it was received.

Ruiz was a person unconnected to the police who voluntarily called 911 to report what she reasonably considered to be reckless driving as she saw it happening. She gave her name and contact information to the 911 operator, and she remained on the phone to give added information concerning the suspect vehicle's location. In short, Ruiz's information was inherently trustworthy. *See Reesing*, 140 S.W.3d at 736. Given the hour, the suspect vehicle's swerving and drifting into the oncoming lane of traffic reasonably warranted a suspicion that the driver was intoxicated. Further, under the circumstances shown by the record, Ruiz's information was sufficiently timely and detailed to justify Wilson in the reasonable suspicion that appellant's car was the suspect vehicle. We hold that Wilson's initial detention of appellant was constitutionally

---

[5] Appellant drove into and was detained in the parking lot of Centex Materials.

justified. Appellant does not dispute that the officer's subsequent observations gave him lawful grounds to arrest.

The point of error is overruled, and the judgment of conviction is affirmed.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   March 24, 2009

Do Not Publish