ACCEPTED
03-14-00806-CR
4723914
THIRD COURT OF APPEALS
AUSTIN, TEXAS
4/1/2015 10:52:20 AM
JEFFREY D. KYLE
CLERK

## No. 03-14-00806-CR

In the Third Court of Appeals
Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
4/1/2015 10:52:20 AM
JEFFREY D. KYLE
Clerk

# DELANE DUMAS,

*Appellant,*

v.

# THE STATE OF TEXAS,

*Appellee.*

On appeal from the County Court-at-Law Number Five,
Travis County, Texas
Trial Cause No. C-1-CR-13-219171

# STATE'S BRIEF

DAVID A. ESCAMILLA
TRAVIS COUNTY ATTORNEY

GISELLE HORTON
ASSISTANT TRAVIS COUNTY ATTORNEY
State Bar Number 10018000
Post Office Box 1748
Austin, Texas 78767
Telephone: (512)854-9415
TCAppellate@traviscountytx.gov

*April 1, 2015*

ATTORNEYS FOR THE STATE OF TEXAS

ORAL ARGUMENT IS NOT REQUESTED

# TABLE OF CONTENTS

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF THE STATE'S ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT

      Reply Point One: The admissibility of State's Exhibit #4 under
      Rule 403 is not preserved for review. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      Reply Point Two: The trial court properly concluded that
      the initial detention was lawful, and therefore properly
      admitted State's Exhibit #3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            Reasonable suspicion, generally . . . . . . . . . . . . . . . . . . . . . . . . . 11

            The 9-1-1 call was inherently reliable, and therefore
            sufficiently reliable to credit the allegation that an
            erratically-driven dark or black station wagon with
            a certain license number was at the predicted location
            on the interstate highway. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            The law imputes the police dispatcher's knowledge of
            the 9-1-1 call's details to the detaining officer. . . . . . . . . . . . . . 16

Discussion of Court of Criminal Appeals opinions that
illustrate the amount of corroboration required when the
informant's report is inherently reliable. . . . . . . . . . . . . . . . . . . . 17

- *Derichsweiler v. State*: Police may lawfully
act on a called-in report of suspicious but not
inherently criminal activity. . . . . . . . . . . . . . . . . . . . . . . . . 17

- *Brother v. State*: A motorist calls 9-1-1 to
describe a motorist's car, location, and erratic driving. . 19

The 9-1-1 call was sufficiently corroborated . . . . . . . . . . . . . . . 21

The substance of the 9-1-1 call objectively supported
reasonable suspicion to believe that criminal activity
was afoot. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Additionally, the detaining officer had reasonable
suspicion independent of the detailed information
relayed in the 9-1-1 call. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

INDEX OF AUTHORITIES

**Statutes** **Page**

TEX. PENAL CODE § 37.08
(West Supp. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Rules**

TEX. R. APP. P. 33.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9
TEX. R. EVID. 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
TEX. R. EVID. 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Cases**

*Adams v. Williams*, 407 U.S. 143
(1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
*Alabama v. White*, 496 U.S. 325
(1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
*Brother v. State*, 166 S.W.3d 255
(Tex. Crim. App. 2005) . . . . . . . . . . . . . . . . . . . . . 13, 14, 15, 19, 20, 21
*Curtis v. State*, 238 S.W.3d 376
(Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
*Derichsweiler v. State*, 348 S.W.3d 906
(Tex. Crim. App. 2011) . . . . . . . . . . . . 12, 13, 14, 15, 16, 17, 18, 19, 20, 21
*Foster v. State*, 326 S.W.3d 609
(Tex. Crim. App. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 21
*Hime v. State*, 998 S.W.2d 893
(Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) . . . . . . . . . . . . . . . . . 15
*Illinois v. Gates*, 462 U.S. 213
(1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
*Johnson v. State*, 414 S.W.3d 184
(Tex. Crim. App. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
*Martinez v. State*, 348 S.W.3d 919
(Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
*Pipkin v. State*, 114 S.W.3d 649
(Tex. App.—Fort Worth 2003, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Reesing v. State*, 140 S.W.3d 732
    (Tex. App.—Austin 2004, pet. ref'd) .......................... 12, 15

*Resendez v. State*, 306 S.W.3d 308
    (Tex. Crim. App. 2009) ........................................ 8

*State v. Dixon*, 206 S.W.3d 587
    (Tex. Crim. App. 2006) ....................................... 11

*State v. Fudge*, 42 S.W.3d 226
    (Tex. App.—Austin 2001, no pet.) ........................... 12, 14

*State v. Nelson*, 228 S.W.3d 899
    (Tex. App.—Austin 2007, no pet.) .............................. 20

*State v. Sailo*, 910 S.W.2d 184
    (Tex. App.—Fort Worth 1995, pet. ref'd) ...................... 15

*State v. Stolte*, 991 S.W.2d 336
    (Tex. App.—Fort Worth 1999, no pet.) ........................ 15

*Taflinger v. State*, 414 S.W.3d 881
    (Tex. App.—Houston [1st Dist.] 2013, no pet.) ................ 14

*Terry v. Ohio*, 392 U.S. 1
    (1968) ..................................................... 12, 13

*United States v. Basey*, 816 F.2d 980
    (5th Cir. 1987) .............................................. 15

*United States v. Sierra-Hernandez*, 581 F.2d 760
    (9th Cir. 1978) .............................................. 15

*Ware v. State*, 724 S.W.2d 38
    (Tex. Crim. App. 1986) ....................................... 14

*Woods v. State*, 956 S.W.2d 33
    (Tex. Crim. App. 1997) ....................................... 13

# STATEMENT OF THE CASE

This is a defense appeal from a conviction for driving while intoxicated (DWI), second offense.[1] After the jury found him guilty of DWI, Dumas pled "true" to the prior-conviction enhancement paragraph. CR 43–44; 3 RR 208. On December 11, 2014, the trial court assessed punishment at one year in jail and a $4,000 fine, but suspended imposition of this sentence and placed Dumas on community supervision for twenty months. CR 44. As conditions of probation, Dumas was required to serve five days in jail, surrender his driver's license for one year, participate in an ignition interlock program, obtain drug and alcohol evaluations, attend rehabilitative programs and courses, and complete 80 hours of community service. CR 44–47. Dumas gave written notice of appeal the same day he was sentenced. CR 55, 57.

_____

[1]    The information contained two enhancement paragraphs, alleging an open container and a prior DWI conviction. CR 13.

1

# BACKGROUND

At around 11:00 p.m. on a Saturday night, Austin police Officer Eberhardt responded to a call from the police dispatcher, who related that a "DWI/reckless" driver was approaching Eberhardt's position from northbound I-35. 3 RR 20. This information came to police attention from an identified motorist's unsolicited 9-1-1 call. The dispatcher relayed the car's description—a dark, maybe black station wagon—the car's license plate number, and the motorist/caller's observation that the car had nearly sideswiped him and had been seen going 90 miles per hour, swerving between lanes. 3 RR 20, 22; 4 RR State's Exhibit #4 (the 9-1-1 call).

Eberhardt waited at the intersection of I-35 and Ben White Boulevard. When a car matching the given description went by, he began to follow it. 3 RR 22. He confirmed the car's license number with the dispatcher, and saw the car weaving in its own lane. 3 RR 22–23; 4 RR State's Exhibit #3 (the dashcam video) @ 10:56:21–10:56:46. Although Eberhardt had not activated his overhead lights, the car he was following exited the interstate, travelled briefly on the service road, then merged back

2

onto I-35 without signalling. 3 RR 23. Suspecting intoxication, Eberhardt initiated a detention. 3 RR 24, 66.

Dumas, the driver, admitted to taking hydrocodone three to four hours earlier, but denied consuming alcohol. 3 RR 32; 4 RR State's Exhibit #3. Eberhardt found a nearly-empty flask of some alcoholic beverage in the center console. 3 RR 80. Dumas's speech was slurred. 3 RR 33, 125. A moderate odor of alcohol emanated from his person. 3 RR 28, 29. He had difficulty tracking the officer with his eyes, and difficulty retrieving his driver's license and proof of insurance. 3 RR 27–28. He was confused; he stated that he was coming from a friend's house on Riverside and was headed home to the "Y" on Highway 290, but the statement did not make sense given his direction of travel. 3 RR 25. His balance was poor, and he swayed while standing after getting out of his car. 3 RR 77, 123.

Dumas displayed all six clues on the horizontal gaze nystagmus test. 3 RR 47. He initially attempted other standardized field sobriety tests, but gave up and refused to participate further when it became clear that he couldn't perform them. 3 RR 53–54; 4 RR State's Exhibit #3. He told

3

Eberhardt that he could not complete the other tests because he had leg and spinal conditions. 3 RR 53. No trial evidence, however, supported this statement. Dumas refused to give a specimen of his breath or blood for testing purposes. 3 RR 131–33.

## ISSUES PRESENTED

*One*: Did the trial court err in overruling Dumas's Rule 403 objection and admitting State's Exhibit #4, the recording of the identified informant's call to 9-1-1?

*Two*: Was State's Exhibit #3, the dashcam video, unlawfully obtained because the detaining officer was not aware of all the particulars of the 9-1-1 call and did not personally observe conduct amounting to a criminal offense?

## SUMMARY OF THE STATE'S ARGUMENT

*One*: Trial counsel never lodged a Rule 403 objection to State's Exhibit #4. This point of error is therefore unpreserved.

*Two*: The law imputes the police dispatcher's knowledge of the 9-1-1 call's contents to Officer Eberhardt, a cooperating officer. The information

4

conveyed in the 9-1-1 call gave rise to reasonable suspicion, and was sufficiently corroborated when the officer identified the offending vehicle by its description, location, and license-plate number.

Independent of that corroboration, the totality of the circumstances shows that the detaining officer personally observed conduct giving rise to reasonable suspicion when he saw the car weave within its own lane late at night, and exit and re-enter the interstate highway for no apparent reason. Because the dashcam video was lawfully obtained, the trial court did not abuse its discretion in admitting it.

## ARGUMENT

*Reply Point One*: **The admissibility of State's Exhibit #4 under Rule 403 is not preserved for review.**

An identified motorist called 9-1-1 to report Dumas's erratic driving on the night in question. A recording of that call was admitted at trial and published to the jury as State's Exhibit #4.[2] 3 RR 8, 60; 4 RR State's Exhibit

---

[2] State's Exhibit #4 involves the transfer of a concerned motorist's 9-1-1 call from the Hays County police dispatcher to the Travis County dispatcher; Dumas was quickly leaving Hays and entering Travis County. Appellate counsel mistakes the Hays County dispatcher's voice for that of a second 9-1-1 caller. But

#4. In it, a Hays County dispatcher briefly relayed the information from the caller/motorist: a car described as a dark-colored station wagon with license plate BXL 7952 was northbound on I-35, passing the 220 exit, and about to enter Travis County. 4 RR State's Exhibit #4 @ 0:06. The car was "unable to maintain a single lane. It is in the middle lane at this time driving approximately 90 miles per hour." 4 RR State's Exhibit #4 @ 0:35. The Hays County dispatcher then transferred the "reckless driving" call to the Austin/Travis County 9-1-1 operator. State's Exhibit #4 @ 0:38.

The caller identified himself by name to the Travis County dispatcher, gave his telephone number, and explained, "This guy we've been following—he's been actually—he almost side-swiped us and so we called 9-1-1 and he was real erratic on the speed." 4 RR State's Exhibit #4 @ 0:44, 1:00. He verified the car's license plate number. 4 RR State's Exhibit #4 @ 1:20. He described what the station wagon was doing and its location: "We're at exit 225. He's in the right hand lane. He's been everywhere from

_____

there was only one caller, identified as J.D. Hines.

6

the left hand lane to the middle lane to side-swiping us. Oh. He's looking down and texting." 4 RR State's Exhibit #4 @ 1:39.

Dumas's first point contends that State's Exhibit #4—the recorded 9-1-1 call—was inadmissible under Rule 403 "because the probative value of the two calls was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury[.]" Dumas's Brief, p. 16. He speculates that, if the 9-1-1 call had not been admitted, "the jury may have acquitted Dumas since the traffic stop video did not show someone obviously intoxicated" or any traffic offenses. Dumas's Brief, p. 16.

The trial court never heard or ruled on a Rule 403 objection to State's Exhibit #4. For this reason, Dumas's first point is unpreserved. TEX. R. APP. P. 33.1.

Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" TEX. R. EVID. 403. Defense counsel's reference at trial to "unfair prejudice" did not put

7

the trial court on notice of a Rule 403 objection. When assessing a party's

trial complaint, courts must look at the context. *Resendez v. State*, 306

S.W.3d 308, 313 (Tex. Crim. App. 2009). Seen in context, the "unfair

prejudice" reference was made in furtherance of a confrontation objection:

"[T]here's a real danger of unfair prejudice [in admitting Exhibit #4], which

is why you have that right of confrontation." 3 RR 6–7. Indeed, the

following record excerpts show that Dumas objected to State's Exhibit #4

solely on Confrontation Clause grounds:

- "So the existence of the 911 call is admissible. But the content, what the person said they saw, I've got a right to cross-examine them on." 3 RR 4.

- "But either way, I believe I have a right to confrontation of the witness if they're going to get into the substance of what the witness allegedly saw." 3 RR 4.

- "So without any opportunity to cross-examine [the 9-1-1 caller], certainly we have a confrontation objection." 3 RR 6.

- "The whole idea of confrontation is you want your own lawyer to be able to ask the questions and not a person working for the court." 3 RR 7.

- "I do believe that it violates the United States Constitution in that he has a right to confront the witness." 3 RR 59.

No reasonable trial court could have understood from trial counsel's arguments that Dumas was making a Rule 403 objection. Because Dumas's contention on appeal fails to comport with his trial objections, his first point of error is not preserved for review. TEX. R. APP. P. 33.1.

If the point had been preserved, the trial court properly admitted State's Exhibit #4 for at least two reasons. First, the exhibit was relevant[3] to the elements of operating a motor vehicle while intoxicated. And second, it gave contextual background by explaining why Eberhardt initially began to observe the car Dumas was driving and eventually pulled it over. This background information was necessary because the jury was instructed that it must first find the detention lawful before it could decide guilt-innocence. In short, evidence showing the reason for the initial detention—which State's Exhibit #4 partially supplied—was of consequence in determining the action, and was therefore admissible. CR 40–41.

---

[3] Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. TEX. R. EVID. 401.

*Reply Point Two*: **The trial court properly concluded that the initial detention was lawful, and therefore properly admitted State's Exhibit #3.**

Dumas's second point contends that Officer Eberhardt did not have reasonable suspicion to initially detain him, and that the entirety of State's Exhibit #3, the dashcam video, was therefore inadmissible as fruit of the poisonous tree. Dumas fails to note that part of State's Exhibit #3 depicts events that transpired **before** the allegedly unlawful detention, and which therefore could not be subject to suppression as unlawfully obtained. Dumas also does **not** contend on appeal that any other evidence flowing from the stop, such as the officer's testimony, was subject to suppression under the exclusionary rule.

Dumas specifically contends that Eberhardt did not have reasonable suspicion to detain because Eberhardt (1) was not aware of sufficient facts from the 9-1-1 call, and (2) did not sufficiently corroborate the informant's report by personally observing criminal conduct. Dumas's Brief, pp. 22–23. Defense counsel did not object at trial to the admissibility of State's Exhibit #3 or any other evidence on grounds that the 9-1-1 caller's information was

10

insufficiently corroborated. Instead, outside the jury's presence, he orally

moved to "suppress the entire stop" on grounds that Dumas had not

committed a traffic offense by failing to signal his exit off of and his re-

entry onto the interstate highway. 3 RR 62–63. The trial court agreed that

the transportation code did not "require a blinker," but overruled the

objection, concluding that "there was reasonable suspicion to stop the

vehicle to investigate either a reckless driving or a driving while

intoxicated charge based upon the evidence that's been admitted." 3 RR 70.

Appellate courts review a suppression ruling for an abuse of

discretion, viewing the record in the "light most favorable to the trial

court's conclusion and revers[ing] the judgment only if it is outside the

zone of reasonable disagreement." *State v. Dixon*, 206 S.W.3d 587, 590 (Tex.

Crim. App. 2006).

**Reasonable suspicion, generally**

A law enforcement officer may stop and briefly detain a person

suspected of criminal activity on less information than is constitutionally

required for probable cause to arrest, because a temporary detention for

11

investigation is considered a lesser intrusion upon personal security. *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968); *Johnson v. State*, 414 S.W.3d 184, 191 (Tex. Crim. App. 2013); *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011); *Reesing v. State*, 140 S.W.3d 732, 735 (Tex. App.—Austin 2004, pet. ref'd); *State v. Fudge*, 42 S.W.3d 226, 229 (Tex. App.—Austin 2001, no pet.).

> Reasonable suspicion is a less demanding standard not only in the sense that it can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

*Derichsweiler*, 348 S.W.3d at 916 n.41 (quoting *Alabama v. White*, 496 U.S. 325 (1990)).

To justify a brief detention for investigative purposes, the officer must be able to articulate something more than an "inchoate and unparticularized suspicion or hunch." *Foster v. State*, 326 S.W.3d 609, 613–14 (Tex. Crim. App. 2010). Specifically, the officer must have some minimal level of objective justification for making the stop. That is, the officer must

12

be able to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion" on the freedom of the person being detained. *Id.* (citing *Terry*, 392 U.S. at 15); *see also Derichsweiler*, 348 S.W.3d at 914; *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005). A brief intrusion is warranted, for instance, where the officer reasonably suspects that the person detained actually is, has been, or soon will be engaged in criminal activity. *Derichsweiler*, 348 S.W.3d at 914; *Brother*, 166 S.W.3d at 257. The reasonableness of a given detention turns on the totality of the circumstances, and considers the public and private interests that are at stake. *Brother*, 166 S.W.3d at 259 n.6.

The facts and circumstances that may provide reasonable suspicion of criminal activity need not themselves be criminal in nature but may include facts that in some way would increase the likelihood of the presence or occurrence of criminal activity. *Derichsweiler*, 348 S.W.3d at 914; *Foster*, 326 S.W.3d at 614; *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). Additionally, the factual basis for stopping a vehicle need not arise from the officer's personal observation, but may be supplied by

13

information acquired from another person. *Derichsweiler*, 348 S.W.3d at 914

(citing *Adams v. Williams*, 407 U.S. 143, 147 (1972)); *Brother*, 166 S.W.3d at

257. For instance, an officer may rely upon information received through

an informant, rather than on his direct observations, so long as the

informant's statement is reasonably corroborated by other matters within

the officer's knowledge. *Illinois v. Gates*, 462 U.S. 213, 242 (1983);

*Derichsweiler*, 348 S.W.3d at 915.

**The 9-1-1 call was inherently reliable, and therefore sufficiently reliable to credit the allegation that an erratically-driven dark or black station wagon with a certain license number was at the predicted location on the interstate highway.**

The evidence clearly shows that the informant identified himself to

the police dispatcher. 4 RR State's Exhibit #4. Texas cases consistently and

uniformly hold that, when police receive information from an identified or

identifiable private citizen-eyewitness who initiates contact with the police

to report another person's suspected criminal act, that information is

inherently credible and reliable.[4] Unlike a person who makes an

---

[4]     *Derichsweiler*, 348 S.W.3d at 914–15; *Brother*, 166 S.W.3d at 257; *Ware v. State*, 724 S.W.2d 38, 40 (Tex. Crim. App. 1986); *Fudge*, 42 S.W.3d at 232; *Taflinger v.*

14

anonymous telephone call, the identified or identifiable eyewitness-informant puts himself in a position to be held accountable for his intervention. *See* TEX. PENAL CODE § 37.08 (West Supp. 2014) (false report to a peace officer or law enforcement employee); *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011); *see also Reesing*, 140 S.W.3d at 737. Thus, the reliability of the information is increased. *State v. Sailo*, 910 S.W.2d 184, 188 (Tex. App.—Fort Worth 1995, pet. ref'd) (quoting *United States v. Sierra-Hernandez*, 581 F.2d 760, 763 (9th Cir. 1978)). And, where the reliability of the information is increased, less corroboration is necessary. *Martinez*, 348 S.W.3d at 923 (citing *Brother*, 166 S.W.3d at 257); *Derichsweiler*, 348 S.W.3d at 914.

---

*State*, 414 S.W.3d 881, 885 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Pipkin v. State*, 114 S.W.3d 649, 655 (Tex. App.—Fort Worth 2003, no pet.); *Hime v. State*, 998 S.W.2d 893, 895 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd); *State v. Stolte*, 991 S.W.2d 336, 341 (Tex. App.—Fort Worth 1999, no pet.). *See also, United States v. Basey*, 816 F.2d 980, 988 (5th Cir. 1987) ("[C]itizen reports of criminal activity have been deemed inherently reliable in Texas *Terry*-stop cases.").

**The law imputes the police dispatcher's knowledge of the 9-1-1 call's details to the detaining officer.**

Dumas contends among other things that Eberhardt did not have reasonable suspicion because he did not personally know all the details of the 9-1-1 call before he initiated a detention. But the law does not require this. In assessing reasonable suspicion, "a reviewing court looks to the totality of the objective information known collectively to the cooperating police officers, including the 9-1-1 dispatcher." *Derichsweiler*, 348 S.W.3d at 915. "The detaining officer need not be personally aware of every fact that objectively supports reasonable suspicion to detain." *Id.* at 914. Thus the rule is that the cumulative information known to cooperating officers at the time of the stop must be considered in determining whether reasonable suspicion exists. *Id.* Eberhardt and the 9-1-1 police dispatcher are regarded as "cooperating officers" for purposes of making this determination. *Id.*

**Discussion of Court of Criminal Appeals opinions that illustrate the amount of corroboration required when the informant's report is inherently reliable.**

The following two opinions illustrate the amount and nature of corroboration that courts require when citizens come forward to report suspicious activity they have observed firsthand.

- *Derichsweiler v. State*: **Police may lawfully act on a called-in report of suspicious but not inherently criminal activity.**

In *Derichsweiler*, a man and his wife were waiting in the drive-through lane of a McDonald's restaurant at night when a man drove up next to them and grinned, staring at them for thirty seconds to a minute before driving on. *Derichsweiler*, 348 S.W.3d at 909. The man circled the restaurant and repeated the behavior as the couple waited for their food. *Id.* Feeling threatened, the husband called 9-1-1. *Id.* at 910. As the husband spoke to the police dispatcher, the man drove to the adjacent Wal-Mart parking lot and appeared to engage in similar conduct, pulling alongside at least two parked cars. *Derichsweiler*, 348 S.W.3d at 911. The husband "admitted that he had witnessed no criminal conduct" or overt threat. *Id.*

17

The responding officer identified the vehicle and initiated an investigative detention. *Derichsweiler*, 348 S.W.3d at 911. All that the officer knew was the caller's name, the identifying characteristics and location of the car, and that the complainant thought that the car was suspicious and wanted the police to check it out. *Id.* n.6. The dispatcher did not pass along the details that had served to raise the couple's suspicions. *Id.* at 911. When the officer contacted the driver, he smelled a strong alcoholic odor and began a DWI investigation. *Id.*

The Court of Criminal Appeals explained that, under these facts, there was no issue with respect to the reliability of the eyewitness report. *Id.* at 915. The report was made by persons who were identified and therefore answerable for the details they provided based on their first-hand perceptions. *Id.* at 915. Similarly, the Court saw no issue with the called-in report as part of the information upon which the officer could rely in establishing reasonable suspicion. *Id.* Although the officer was not apprised of all the information relayed, it was part of the collective knowledge known to the cooperating officers, which included the police

18

dispatcher. *Derichsweiler*, 348 S.W.3d at 915. The only issue in the case was whether "the totality of that reliable information provided specific, articulable facts that, combined with reasonable inferences to be derived from those facts, would lead to the reasonable conclusion that the [suspect] was committing, or soon would be engaged in, some type of criminal activity." *Id.* at 915–16.

The Court concluded that it did. Even though the informants did not observe or report any particular criminal conduct, the reported behavior was sufficiently bizarre for police to make a "brief stop to investigate, if only by their presence to avert an inchoate offense." *Id.* at 916.

- *Brother v. State*: **A motorist calls 9-1-1 to describe a motorist's car, location, and erratic driving.**

In *Brother*, the citizen-eyewitness called the 9-1-1 dispatcher on her cell phone to report speeding, tailgating, and weaving across several lanes of traffic. *Brother*, 166 S.W.3d at 256. At the dispatcher's request, the eyewitness followed the suspect and activated her hazard lights to help the officer quickly identify the vehicle. *Id.* at 258. The eyewitness continued to

19

provide her observations to the dispatcher until the arresting officer stopped the car in question. *Id.* at 257. The officer did not personally witness any erratic driving but testified that the facts relayed by the police dispatcher "sounded like a possible intoxicated driver." *Id.*

Upholding the stop as lawful, the Court unequivocally rejected the defense argument that an officer must personally observe activity giving rise to reasonable suspicion.

> To require officers who are apprised of detailed facts from citizen-eyewitnesses to observe suspects and wait until additional suspicious acts are committed, would be foolish and contrary to the balance of interests struck in *Terry* and its progeny.

*Id.* at 259.

**The 9-1-1 call was sufficiently corroborated** when Officer Eberhardt identified the vehicle by its description, location, and license number. *Derichsweiler*, 348 S.W.3d at 915; *Brother*, 166 S.W.3d at 258–59. The identified caller's information was further corroborated when Eberhardt saw Dumas swerving within his own lane. *See State v. Nelson*, 228 S.W.3d 899, 904 (Tex. App.—Austin 2007, no pet.).

**The substance of the 9-1-1 call objectively supported reasonable suspicion to believe that criminal activity was afoot.**

Because the identified caller's information was sufficiently corroborated, the only question is whether the information that the known citizen-informant provided, viewed under the totality of the circumstances, "objectively supports a reasonable suspicion to believe that criminal activity is afoot." *Derichsweiler*, 348 S.W.3d at 915.

The 9-1-1 caller saw the station wagon swerve in and out of traffic lanes, travel 90 miles an hour, and nearly sideswipe him. 3 RR 20, 22. The driver of this car was texting. This information objectively supports a reasonable suspicion that criminal activity was afoot. *Foster*, 326 S.W.3d at 613 n.10 (unusual driving late at night, no observed traffic offense); *Brother*, 166 S.W.3d at 256 (speeding, tailgating, weaving across several lanes).

**Additionally, the detaining officer had reasonable suspicion independent of the detailed information relayed in the 9-1-1 call.**

The facts of Dumas's case are even stronger than those of *Brother* because Eberhardt saw Dumas swerving within his own lane, failing to use a turn signal, and inexplicably exiting and re-entering the highway late one

Saturday night. 3 RR 22–23. From these observations alone Eberhardt could have rationally inferred that Dumas was driving recklessly or driving while intoxicated. *Curtis v. State,* 238 S.W.3d 376, 381 (Tex. Crim. App. 2007).

## PRAYER

For these reasons, the Travis County Attorney, on behalf of the State of Texas, asks this Court to overrule the points of error and affirm the judgment of conviction for driving while intoxicated—second offense.

Respectfully submitted,

DAVID A. ESCAMILLA
TRAVIS COUNTY ATTORNEY

_____
Giselle Horton
Assistant Travis County Attorney
State Bar Number 10018000
Post Office Box 1748
Austin, Texas 78767
Telephone: (512)854-9415
TCAppellate@traviscountytx.gov

ATTORNEYS FOR THE STATE OF TEXAS

22

## CERTIFICATE OF COMPLIANCE

Relying on Corel WordPerfect's word-count function, I certify that this document complies with the word-count limitations of TEX. R. APP. P. 9.4. The document in its entirety contains 4730 words.

_____
Giselle Horton

## CERTIFICATE OF SERVICE

I certify that I have sent a complete and legible copy of this State's Brief via electronic transmission, to Mr. Dumas's attorney of record, Mr. Gregory Sherwood, at gsherwood@mail.com, on or before April 8, 2015.

_____
Giselle Horton

23