# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00454-CR

**Clifton Crews Hoyt, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 391ST JUDICIAL DISTRICT
### NO. D-10-0665-SA, HONORABLE THOMAS J. GOSSETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Clifton Crews Hoyt was charged with the offense of driving while intoxicated. *See* Tex. Penal Code § 49.04(a). The indictment also alleged that Hoyt had previously been convicted of two counts of driving while intoxicated, which elevated the severity of the charge at issue to a third-degree felony. *See id.* § 49.09(b). Further, the indictment alleged that Hoyt was previously convicted of a felony-level offense for driving while intoxicated, which elevated the permissible punishment range for the offense at issue to that of a second-degree felony. *See id.* § 12.42(a); *see also id.* § 12.33 (setting out permissible punishment range for second-degree felony). Prior to trial, Hoyt filed a motion to suppress evidence pertaining to the traffic stop as well as his arrest, and the district court denied the motion to suppress. At the conclusion of the trial, the district court sentenced Hoyt to twelve years' imprisonment. In two issues on appeal, Hoyt asserts that the district

court erred by denying his motion to suppress and that the evidence supporting his conviction is legally insufficient. We will affirm the district court's judgment of conviction.

## DISCUSSION

**Motion to Suppress**

In his first issue on appeal, Hoyt contends that the district court abused its discretion by denying his motion to suppress. In particular, Hoyt contends that the district court abused its discretion when it made its ruling because Officer Bruce Stewart did not have a sufficient basis to initiate a traffic stop or to detain Hoyt to conduct field-sobriety tests.[1]

"Appellate courts review a trial court's ruling on a motion to suppress by using a bifurcated standard, giving almost total deference to the historical facts found by the trial court and analyzing *de novo* the trial court's application of the law." *State v. Cuong Phu Le*, No. PD-0605-14, 2015 Tex. Crim. App. LEXIS 516, at *8 (Tex. Crim. App. Apr. 29, 2015). Under that standard, the record is "viewed in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'"

---

[1] When challenging the district court's ruling, Hoyt primarily refers to testimony from Officer Stewart indicating that he was dispatched to a local restaurant to investigate a complaint regarding a potentially intoxicated driver who was driving a car that matched Hoyt's car but that the vehicle was not at the restaurant when the officer arrived. After noting this testimony, Hoyt contends that the State did not present any evidence regarding the information that the dispatcher had prior to sending Officer Stewart to the restaurant or regarding the person who made the complaint. For these reasons, Hoyt contends that the tip that the dispatcher received could not establish probable cause or reasonable suspicion to arrest or detain Hoyt. However, as set forth in the opinion, Officer Stewart's observations of Hoyt's driving established reasonable suspicion. Accordingly, we need not consider the information or lack of information that the dispatcher received prior to Officer Stewart initiating a traffic stop.

2

*State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)); *see also id.* (explaining that trial court's ruling on motion to suppress will be upheld if it is correct on theory of law applicable to case regardless of whether trial court based its ruling on that theory).

"Routine traffic stops are analogous to investigative detentions." *Martinez v. State*, 236 S.W.3d 361, 369 (Tex. App.—Fort Worth 2007, pet. ref'd, untimely filed); *see also State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011) (describing types of interactions between citizens and law-enforcement personnel). Investigative detentions are less intrusive than arrests, *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011), and must be supported by reasonable suspicion, which "exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has, or soon will be, engaged in criminal activity," *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008). In addressing whether a stop was supported by reasonable suspicion, reviewing courts must consider whether the officer's actions were justified at the inception and whether the circumstances justifying the stop are reasonably related to the seizure's scope. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). In this context, reasonableness is measured objectively by considering the totality of the circumstances. *Id.*; *see also id.* at 62 (noting that determination regarding reasonableness of search or seizure is reviewed de novo). Moreover, "[i]f during a valid traffic stop and detention, the officer develops reasonable suspicion that the detainee is engaged in criminal activity, prolonged or continued detention is justified." *Haas v. State*, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref'd); *see Powell v. State*, 5 S.W.3d 369, 377 (Tex. App.—Texarkana

3

1999, pet. ref'd); *see also Woodard*, 341 S.W.3d at 414 (explaining that information known to officer gave him probable cause to arrest defendant or reasonable suspicion to detain and administer field-sobriety tests).

During the trial, Officer Stewart was the only witness. In his testimony, he explained that while he was on patrol at approximately 2:30 a.m., he observed the vehicle that Hoyt was driving make "a wide right turn."[2] Further, Officer Stewart explained that he believed that the manner in which the turn was made constituted a traffic violation because drivers are obligated to stay as close as possible to the curb. Consistent with Officer Stewart's testimony, the Transportation Code specifies that a driver who is making "a right turn at an intersection . . . shall make both the approach and the turn as closely as practicable to the right-hand curb or edge of the roadway." *See*

---

[2] On appeal, Hoyt notes that although Officer Stewart had a video camera in his car at the time, the camera did not record the turn at issue and did not activate until the emergency lights were turned on. Accordingly, Hoyt insists that this Court cannot adequately determine whether the right turn constituted a traffic violation. However, the officer who observed the turn did testify and was subject to cross-examination by Hoyt, and the officer's testimony was uncontradicted. *See Pecina v. State*, 361 S.W.3d 68, 79 (Tex. Crim. App. 2012) (explaining that when reviewing ruling on motion to suppress, appellate courts extend almost total deference to application of law to fact question turning on credibility and demeanor).

Tex. Transp. Code § 545.101(a).[3]  When ruling on Hoyt's motion to suppress, the district court

expressly found that Officer Stewart observed Hoyt make a wide right turn.

In light of the district court's determination and of Officer Stewart's testimony, we

must conclude that the district court did not abuse its discretion by determining that Officer Stewart

was authorized to initiate a traffic stop of Hoyt.  *See Bullock v. State*, 426 S.W.3d 226, 229 (Tex.

App.—Houston [1st Dist.] 2012, no pet.) (providing that "[a] law enforcement officer may lawfully

stop and detain a motorist who commits a traffic violation"); *Vasquez v. State*, 324 S.W.3d 912, 919

(Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (explaining that officer may initiate traffic stop

if he has reasonable basis to believe that individual has committed traffic offense).

---

[3] In his reply brief, Hoyt asserts that a wide right turn does not constitute a traffic violation if it is "done in a manner that is not unsafe or dangerous."  As support for this proposition, Hoyt refers to cases from various courts, including one from this Court, pertaining to alleged violations of the provision of the Transportation Code requiring drivers to drive within a single lane of traffic. Specifically, the statute provides that a driver "shall drive as nearly as practical entirely within a single lane" and "may not move from the lane *unless that movement can be made safely*."  Tex. Transp. Code § 545.060(a) (emphasis added).  In light of the phrase authorizing crossing a lane when it is safe to do so, this Court determined that crossing a lane marker does not constitute a traffic offense unless the movement was not safe at that time or was not made safely and that observing a driver cross a lane marker when it is safe to do so does not establish reasonable suspicion to conclude that a traffic violation has occurred.  *See Hernandez v. State*, 983 S.W.2d 867, 870-72 (Tex. App.—Austin 1998, pet. ref'd) (determining that crossing lane marker under circumstances of case when it was safe to do so did not provide reasonable suspicion that driver was intoxicated or that traffic offense had occurred); *see also Fowler v. State*, 266 S.W.3d 498, 499 (Tex. App.—Fort Worth 2008, pet. ref'd) (holding that officer does not have reasonable suspicion for traffic stop when officer observes "the tires of the defendant's vehicle cross into an adjacent same-direction lane by a tire's width a single time" and "when there is no other traffic in the area"); *Eichler v. State*, 117 S.W.3d 897, 901 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (concluding that single instance of crossing lane marker into lane traveling in same direction when no showing was made that it was unsafe to do so at that time was insufficient to establish reasonable suspicion).  However, unlike the statute requiring drivers to remain within a single lane of traffic, the statute at issue in this case does not contain any language potentially excusing the prohibited conduct if the turn is done in a safe manner.  *Compare* Tex. Transp. Code § 545.060(a), *with id.* § 545.101(a).

Regarding the events that occurred after he observed the traffic violation, Officer Stewart explained that when he turned on his emergency lights, Hoyt's "vehicle veered to the north side of the [road], struck the curb, and then it started pulling to the south side, and as it came to a stop, it struck the south side curb." Regarding the first contact with the curb, Officer Stewart explained that Hoyt "hit the curb pretty hard." In his testimony, Officer Stewart also stated that when he approached Hoyt's vehicle and began talking to Hoyt, he noticed the odor of alcohol coming from Hoyt and observed that Hoyt's "eyes were red, bloodshot eyes." Furthermore, Officer Stewart related that based on these indicators of intoxication as well as Hoyt's driving, he asked Hoyt to perform field-sobriety tests. When denying Hoyt's motion to suppress, the district court entered findings that were consistent with Stewart's testimony.

In challenging the district court's ruling, Hoyt contends that bloodshot eyes and the smell of alcohol are insufficient to establish intoxication because red eyes can be caused by any number of conditions and because an individual can smell like alcohol after consuming an amount of alcohol well below the amount that would render someone legally intoxicated. Further, Hoyt points to testimony from Officer Stewart in which he admitted that red eyes, without more, do not establish that someone is intoxicated, that the smell of alcohol cannot be used to ascertain how much an individual has had to drink, and that it is common for individuals who are not impaired to commit the traffic offense of making a wide right turn.

However, the existence of reasonable suspicion is made after considering the totality of the circumstances, *State v. Nelson*, 228 S.W.3d 899, 904-05 (Tex. App.—Austin 2007, no pet.), and the court of criminal appeals has explained that evidence that would logically raise an inference

6

that an individual is intoxicated includes, among other things, "erratic driving" and "bloodshot eyes," *Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010). *See also* Tex. Penal Code § 49.01(2)(A) (defining term intoxicated as meaning "not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . . into the body"). Consistent with these indicators, as set out above, Officer Stewart testified that he observed Hoyt commit a traffic violation at approximately 2:30 a.m., that Hoyt exhibited erratic driving when the police lights were turned on, and that Hoyt had red eyes and smelled like alcohol.

In light of the district court's determinations and of Officer Stewart's testimony, we must conclude that the district court did not abuse its discretion by concluding that Officer Stewart was authorized to detain Hoyt in order to ask him to perform field-sobriety tests because reasonable suspicion existed that Hoyt had committed the offense of driving while intoxicated.

For all of these reasons, we conclude that the district court did not abuse its discretion by denying Hoyt's motion to suppress and, therefore, overrule Hoyt's first issue on appeal.

**Legal Sufficiency of the Evidence**

In his second issue on appeal, Hoyt asserts that the evidence presented during the trial is legally insufficient to support his conviction for driving while intoxicated.[4] As set out above,

---

[4] On appeal, Hoyt also contends that the evidence is factually insufficient. However, the court of criminal appeals has clarified that the "legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *cf. Lucio v. State*, 351 S.W.3d 878, 895 (Tex. Crim. App. 2011) (explaining that "[w]e do not review the factual sufficiency of the evidence to support a jury's finding on the elements of a criminal offense that the State is required to prove beyond a reasonable doubt").

the Penal Code specifies that an individual commits that offense if he "is intoxicated while operating a motor vehicle in a public place," Tex. Penal Code § 49.04(a), and defines intoxicated, in part, as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body," *id.* § 49.01(2). When challenging his conviction, Hoyt limits his arguments to whether there was sufficient evidence to show that he was intoxicated.

Under a legal-sufficiency review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this review, an appellate court must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make reasonable inferences "from basic facts to ultimate facts." *Id.* Moreover, appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

In addition to Officer Stewart's testimony regarding Hoyt committing a traffic violation by making a wide right turn, veering from one side of the road to the other and striking the curb on both sides, having bloodshot eyes, and smelling like alcohol, Officer Stewart also described

the results of Hoyt's field-sobriety testing.[5]  *See Kirsch*, 306 S.W.3d at 745 (listing "inability to

perform field-sobriety tests or follow directions" as "evidence that would logically raise an inference

that the defendant was intoxicated").  In particular, Officer Stewart explained that he performed the

horizontal gaze nystagmus test on Hoyt and that he observed the maximum number of clues of

intoxication during the testing.  Next, Officer Stewart explained that he asked Hoyt to perform the

walk-and-turn test and that Hoyt started the test before being told to begin, "missed heel-to-toe steps,

used his arms for balance, stepped off line, and made an improper turn."  When summarizing Hoyt's

performance, Officer Stewart testified that Hoyt displayed six of eight possible clues of intoxication.

In addition, Officer Stewart also related that he asked Hoyt to perform the one-leg-stand test and that

during the test, Hoyt used his arms for balance, put his foot down, and swayed.  When describing the

results, Officer Stewart revealed that Hoyt exhibited three of four possible indicators of intoxication.

Furthermore, Officer Stewart stated that after assessing the results and after considering his prior

observations, he formed an opinion that Hoyt was intoxicated and arrested him for driving while

intoxicated.[6]  *See Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet.

ref'd) (providing that, in general, officer's testimony that individual is intoxicated provides sufficient

evidence to establish element of intoxication).  Finally, Officer Stewart related that after he arrested

Hoyt, he asked Hoyt to submit a sample of his breath or blood for alcohol testing but that Hoyt

refused to provide a sample.  *See Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008)

---

[5] During the trial, Officer Stewart explained that he received special training on how to administer field-sobriety tests, that he has been certified to perform those tests, and that he administers those tests as a regular part of his job.

[6] In his testimony, Officer Stewart also related that when he performed a search incident to arrest, he found less than two ounces of marijuana inside the pocket of Hoyt's pants.

(noting that defendant's refusal to submit to breath test "tends to show a consciousness of guilt"); *see also Derrick v. State*, No. 05-14-00802-CR, 2015 Tex. App. LEXIS 4723, at * 7 (Tex. App.—Dallas May 8, 2015, no pet. h.) (mem. op., not designated for publication) (explaining that individual's refusal to submit to breath test "can support the inference that he would fail the test because he thought he was intoxicated").

When challenging the sufficiency of the evidence, Hoyt points to the portions of Officer Stewart's testimony discussed in the previous issue in which he admitted that the observations forming the basis for his decision to ask Hoyt to perform field-sobriety testing, including the observations of Hoyt's driving, of Hoyt's smelling like alcohol, and of Hoyt's bloodshot eyes, would not necessarily indicate that someone was intoxicated if those factors were considered individually. Furthermore, Hoyt seems to suggest that the portion of Officer Stewart's testimony in which he discussed the results of the field-sobriety testing should not be considered because the tests were not done in compliance with "standardized protocols" and are, according to Hoyt, unreliable. *See Plouff v. State*, 192 S.W.3d 213, 219 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (noting that nystagmus test has been recognized as valid scientific test and that it is properly applied when officer complies with standardized procedures). As support for his assertion that the testing was done improperly, Hoyt points to the portion of Officer Stewart's testimony in which he agreed that before performing a nystagmus test, officers should turn a suspect away from potential distractions but admitted that the testing that he performed could have been done in "a better environment" because his emergency lights were on for part of the test, because Hoyt was facing the headlights of passing traffic when performing the test, and because there were officers walking

10

around the area of the test. In addition, Hoyt refers to Officer Stewart's testimony in which he related that during the walk-and-turn and one-leg-stand tests, the testing officer is not supposed to make any comments but that he continued to provide instructions during the tests.[7] Finally, Hoyt highlights the portion of Officer Stewart's testimony in which he admitted that the failure to comply with the standardized protocols could affect the results of a field-sobriety test and could be distracting.

However, Hoyt did not challenge the admissibility of the results of any of the field-sobriety tests on these grounds before or during the trial, nor did he object to Officer Stewart's testimony regarding the testing that he performed. *See* Tex. R. App. P. 33.1(a) (setting out requirements for preserving complaint for appeal); Tex. R. Evid. 103 (providing that error may not be based on admission of evidence unless timely objection is made or motion to strike appears in record); *Reyes v. State*, 361 S.W.3d 222, 233 (Tex. App.—Fort Worth 2012, pet. ref'd) (noting that failure to object "forfeits complaints about the admissibility of evidence"); *see also Gowin v. State*, No. 12-07-00233-CR, 2008 Tex. App. LEXIS 6873, at *3-6 (Tex. App.—Tyler Sept. 17, 2008, no pet.) (mem. op., not designated for publication) (concluding that defendant waived objections regarding nystagmus test by failing to properly object). Moreover, in reviewing the legal sufficiency of the evidence supporting a conviction, appellate courts consider "*all* evidence that the trier of fact was

---

[7] In his opening brief and in his reply brief, Hoyt seems to suggest that the evidence was insufficient in this case, in part, because Officer Stewart admitted that he could not remember how many field-sobriety tests he conducted. However, after reviewing the officer's statement in light of his surrounding testimony, we believe that his statement is more properly interpreted as relating that the officer could not specify how many times in his career as a police officer that he has asked an individual to submit to field-sobriety testing and then released the individual without arresting him. Regardless, we do not believe that this portion of the officer's testimony could render the remaining evidence legally insufficient.

permitted to consider, regardless of whether it was rightly or wrongly admitted." *Demond v. State*, 452 S.W.3d 435, 445 (Tex. App.—Austin 2014, pet. ref'd) (emphasis added). Furthermore, when deciding what weight, if any, to give to the evidence regarding the results of the field-sobriety tests, the district court was aided by the additional testimony from Officer Stewart explaining that he believed that the results of the nystagmus testing were reliable; that any of the potential distractions did not have an impact on the results of the nystagmus test; that he was very close to Hoyt during the nystagmus test, was able to see Hoyt's eyes, and was able to observe that Hoyt's eyes were fixed on the testing instrument; that when he talked to Hoyt during the walk-and-turn and one-leg-stand tests, he was attempting to "direct [Hoyt] in the right way" because Hoyt was not following the instructions; and that when he talked to Hoyt during the one-leg-stand test, he was just asking Hoyt to point his toes. *Cf. Plouff*, 192 S.W.3d at 219 (explaining that slight variations in administration of nystagmus test do not render testimony regarding results unreliable or inadmissible but may affect weight to be given to testimony).

In light of all of the evidence previously summarized as well as the reasonable inferences that the district court could have made from that evidence and given our standard of review for legal-sufficiency challenges, we conclude that the evidence is legally sufficient to support the district court's determination that Hoyt was intoxicated. Accordingly, we overrule Hoyt's second issue on appeal.

## CONCLUSION

Having overruled Hoyt's issues on appeal, we affirm the district court's judgment of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed:  June 4, 2015

Do Not Publish